## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GLENN HEAGERTY )
     Plaintiff, )
  )
v. )
  )
LUEDER, LARKIN & HUNTER, LLC, )
     Defendant. )
  )
_____ )

Civil Action File No.
1:18-cv-03412-ELR-RGV

## DEFENDANT'S ANSWER AND DEFENSES
## TO PLAINTIFF'S COMPLAINT

COMES NOW, Defendant Lueder, Larkin & Hunter, LLC, by and through counsel, and files its Answer and Defenses to Plaintiff's Complaint as follows:

## ANSWER

In response to the specific allegations in the enumerated paragraphs in the Complaint, Defendant responds as follows:

1. Defendant denies that it has engaged in any attempts to unlawfully, misleadingly, and abusively collect a debt owed by Plaintiff and denied that it has caused any damages to Plaintiff.

2. Defendant denies that it has violated any of the statutes cited by Plaintiff or committed any violations described in Plaintiff's complaint.

3. Paragraph 3 is a legal conclusion to which no response is required. To the extent that a response may be required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3.

4. Defendant denies that is has violated any provisions of the Fair Debt Collections Practices Act.

5. To the extent that Plaintiff has properly alleged his claims, Defendant admits that this Court may exercise its jurisdiction.

6. Defendant admits the allegations in Paragraph 6.

7. Defendant admits that venue is proper herein.

8. Defendant admits that Plaintiff is a natural person and a resident of Forsyth County, Georgia.

9. Defendant admits the allegations of Paragraph 9.

10. Defendant admits the allegations of Paragraph 10.

11. Defendant admits the allegations of Paragraph 11.

12. Defendant admits the allegations of Paragraph 12.

13. Defendant denies that Plaintiff has suffered any injury as a result of any acts committed by Defendant.

14. Defendant denies that Plaintiff has suffered any injury as a result of any acts committed by Defendant.

15. Defendant denies that it has violated any of Plaintiff's alleged statutory rights.

16. Defendant denies that it has violated any provisions of the FDCPA and further denies causing any injury to Plaintiff.

17. Defendant denies causing any injury to Plaintiff.

18. Defendant denies causing any injury to Plaintiff.

19. Defendant admits the FDCPA provides for communications to be sent to counsel.

20. Defendant states the provisions of the FDCPA speak for themselves and to the extent that Plaintiff misstates, misrepresents, and/or mischaracterizes the provisions of the FDCPA, the allegations of paragraph 20 are denied.

21. Defendant states the provisions of the FDCPA speak for themselves and to the extent that Plaintiff misstates, misrepresents, and/or mischaracterizes the provisions of the FDCPA, the allegations of paragraph 21 are denied.

22. Defendant denies the allegations paragraph 22.

23. Defendant admits the allegations of paragraph 23.

24. Defendant admits the allegations of paragraph 24.

25. Defendant admits the allegations of paragraph 25 but further asserts that the residence is also Plaintiff's business office.

26. Defendant admits using the United States Mail in its collections efforts but denies using the interstate phone system.

27. Defendant admits the allegations of paragraph 27.

28. Defendant admits the allegations of paragraph 28.

29. Defendant admits the allegations of paragraph 29.

30. Defendant admits the allegations of paragraph 30.

31. Defendant admits the allegations of paragraph 31.

32. Defendant admits the allegations of paragraph 32.

33. Defendant admits the allegations of paragraph 33.

34. Defendant admits the allegations of paragraph 34.

35. Defendant admits the allegations of paragraph 35.

36. Defendant admits the allegations of paragraph 36.

37. Defendant admits the allegations of paragraph 37.

38. Defendant admits the allegations of paragraph 38.

39. Defendant admits the allegations of paragraph 39.

40. Defendant denies that the garnishment was ordered dismissed, instead the Fulton County Magistrate Court granted a traverse filed by Heagerty's business, Consumer Solutions, Inc.

41. Defendant admits the allegations of paragraph 41.

42. Defendant denies that Plaintiff hired "additional lawyers". Rather, Plaintiff kept the attorney that represented his company, Consumer Solutions, Inc.

43. Defendant admits the allegations of paragraph 43.

44. Defendant admits the allegations of paragraph 44.

45. Defendant admits the allegations of paragraph 45.

46. Defendant admits the allegations of paragraph 46.

47. Defendant admits the allegations of paragraph 47 and further states that said letter was sent in direct response to a request sent by Plaintiff. A true and correct copy of Mr. Heagerty's request is attached hereto as Exhibit "1" and is incorporated herein by reference.

48. Defendant denies the allegations of paragraph 48 as Plaintiff was not represented by counsel in the State Court lawsuit at the time. Plaintiff's counsel did not file an Entry of Appearance in the case until June 28, 2018. A true and correct copy of the Entry of Appearance is attached hereto as Exhibit "2" and is incorporated herein by reference.

49. Defendant denies the allegations of paragraph 49.

50. Defendant admits that it was in contact with an attorney representing Plaintiff in the garnishment action, but denies that said attorney was representing Plaintiff in the State Court case.

51. Defendant denies discussing the Alleged Debt with counsel.   All communications were limited to the garnishment.

52. Defendant denies the allegations of paragraph 52.

53. Defendant admits the allegations of paragraph 53.

54. Defendant denies the allegations of paragraph 54. OCGA § 7-4-12 (b) provides that:

> If the judgment is rendered on a written contract or obligation providing for interest at a specified rate, the judgment shall bear interest at the rate specified in the contract or obligation.

Here, the debt at issue arose from Plaintiff's obligation under a recorded Declaration of Covenants of a Homeowners Association for which he is a mandatory member.  Paragraph 4.1 of The Declaration sets the interest rate at 18%.   A true and correct copy of the assessment provision of the

Declaration of Covenants is attached hereto as Exhibit "3" and is incorporated herein by reference.

55. Defendant admits the allegations of paragraph 55.

56. Defendant denies the allegations of paragraph 56.

57. Defendant admits the allegations of paragraph 57.

58. Defendant admits the allegations of paragraph 58.

59. Defendant admits the allegations of paragraph 59.

60. Defendant admits the allegations of paragraph 60.

61. Defendant denies the allegations of paragraph 61.

62. Defendant admits the allegations of paragraph 62.

63. Defendant admits the allegations of paragraph 63.

64. Defendant denies the allegations of paragraph 64. Defendant denies receiving any communications from Plaintiff outside of those presented to the State Court.

65. Defendant admits the allegations of paragraph 65.

66. Defendant denies receiving any email from Plaintiff with amended discovery responses.

67. Defendant denies receiving any amended discovery responses.

68. Defendant denies receiving Mr. Heagerty's February 21, 2017 email.

69. Defendant denies the allegations of paragraph 69. Defendant denies receiving any communications from Plaintiff outside of those presented to the State Court.

70. Defendant denies the allegations of paragraph 70.

71. Defendant denies the allegations of paragraph 71. Defendant's counsel advised Plaintiff's counsel that a discussion was unnecessary as there had been no violations of the FDCPA. A true and correct copy of Defendant's email to Plaintiff's counsel is attached hereto as Exhibit "4" and is incorporated herein by reference.

72. Defendant denies the allegations of paragraph 72.

73. Defendant denies the allegations of paragraph 73.

74. Defendant denies the allegations of paragraph 74.

75. Defendant denies the allegations of paragraph 75.

76. Defendant denies that it committed the acts and omissions as alleged by Plaintiff.

77. Defendant denies that it committed the acts and omissions as alleged by Plaintiff.

78. Defendant denies that it committed the acts and omissions as alleged by Plaintiff.

79. Paragraph 79 is a legal conclusion as to which no response is required.  To the extent a response may be required, Defendant denies the allegations therein.

80. Defendant incorporates by reference all of the above paragraphs of its Answer as though fully stated herein.

81. Defendant denies the allegations of paragraph 81.

82. Defendant admits the allegations of paragraph 82 and further states that said letter was sent in direct response to a request sent by Plaintiff.  See, Exhibit "1" hereto.

83. Defendant denies the allegations of paragraph 83 as Plaintiff was not represented by counsel in the State Court lawsuit at the time of the communication in question.  See, Exhibit "2" hereto.

84. Defendant denies the allegations of paragraph 84.

85. Defendant denies the allegations of paragraph 85.

86. Defendant denies the allegations of paragraph 86.

87. Defendant denies the allegations of paragraph 87.

88. Defendant denies the allegations of paragraph 88.

89. Defendant denies the allegations of paragraph 89.

90. Defendant denies the allegations of paragraph 90.

91. Defendant denies the allegations of paragraph 91.

92. Defendant denies the allegations of paragraph 92.

93. Defendant denies the allegations of paragraph 93.

94. Defendant denies the allegations of paragraph 94.

95. Defendant denies the allegations of paragraph 95.

96. Defendant denies the allegations of paragraph 96.

97. Defendant denies the allegations of paragraph 97.

98. Defendant denies the allegations of paragraph 98.

99. Defendant denies the allegations of paragraph 99.

100. Defendant denies the allegations of paragraph 100.

101. Defendant denies the allegations of paragraph 101.

102. Defendant denies the allegations of paragraph 102.

103. Defendant denies the allegations of paragraph 103.

104. Defendant denies the allegations of paragraph 104.

105. Defendant denies the allegations of paragraph 105.

106. Defendant denies the allegations of paragraph 106.

107. Defendant denies the allegations of paragraph 107.

108. Defendant denies the allegations of paragraph 108.

109. Defendant denies the allegations of paragraph 109. See, OCGA § 7-4-12 (b) and Exhibit "3" attached hereto.

110. Defendant denies that it seeks to collect interest on interest.

111. Defendant denies the allegations of paragraph 111.

112. Defendant denies the allegations of paragraph 112.

113. Defendant denies the allegations of paragraph 113. See, OCGA § 7-4-12 (b) and Exhibit "3" attached hereto.

114. Defendant denies the allegations of paragraph 114.

115. Defendant denies the allegations of paragraph 115.

116. Any allegation in Plaintiff's Complaint not heretofore specifically responded to by Defendant is hereby denied.

## DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiff, Defendant pleads the following defenses to the Complaint:

## FIRST DEFENSE

Defendant asserts that Plaintiff has failed to state a claim upon which relief may be granted.

## SECOND DEFENSE

Defendant asserts that Plaintiff has not suffered any injury in fact.

### THIRD DEFENSE

Defendant asserts waiver, laches and estoppel.

### FOURTH DEFENSE

Defendant asserts that any alleged violations of the FDCPA were the result of a bona-fide error.

### FIFTH DEFENSE

Defendant reserves the right to have additional defenses that it learns through the course of discovery.

**WHEREFORE,** having fully answered or otherwise responded to the allegations in Plaintiff's Complaint, Defendant prays that:

(1) Plaintiff's Complaint be dismissed in its entirety and with prejudice, with all costs taxed against Plaintiff;

(2) Defendant be awarded such other and further relief as the Court deems just and appropriate.

Respectfully submitted  this 10 day of August, 2018.

LUEDER, LARKIN & HUNTER, LLC

*/s/* **John T. Lueder, Esq.**
John T. Lueder
Georgia Bar No. 460665
Attorney for Defendants
LUEDER, LARKIN & HUNTER, LLC
5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005
Telephone: (770) 685-7000
Facsimile: (770) 685-7002
Email: johnlueder@luederlaw.com

*s/* **Brandon D. Wagner Esq.**
Brandon D. Wagner
Georgia Bar No. 768064
Attorneys for Defendants
LUEDER, LARKIN & HUNTER, LLC
5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005
Telephone: (770) 685-7000
Facsimile: (770) 685-7002
Email: bwagner@luederlaw.com

Glenn Heagerty
2890 Willow Wisp Way
Cumming, GA 30040

July 24, 2017

Certified Mail Receipt #s:

Sawnee View Farms HOA
P.O. Box 1546
Cumming, GA 30028

Re:  2017 HOA Annual Assessment Installment #2 Payment

Please find attached a money order for the payment of installment #2 for the 2017 HOA
Annual Assessment. The amount being paid is $243.53.

Also attached is the invoice you sent me with the erroneous amount highlighted in red and
the correct amount written to the side. The amount you invoiced me for does not match the
amount I owe. I have sent you previously the computation authorized in the covenants and
the actual and budgeted expense for garbage service in 2016 and 2017, respectively.
Please let me know if you need me to forward those to you again.

I request a certificate of past due assessments from the HOA and signed by an officer of the
HOA as provided for by the covenants(the covenants require the certificate to be issued
within five days of receipt of the request).

Please let me know if you have any questions or need more information from me.

Sincerely,

Glenn Heagerty

EXHIBIT
1

## SAWNEE VIEW FARMS HOA
**P.O. BOX 1546          Cumming, GA  30028**

June 30, 2017

To: Sawnee View Farms Homeowners

From: HOA Board of Directors

Re: 2017 Home Owners Annual Assessment

**This memo serves as the Invoice for the second half 2017 HOA Annual Assessment.**

Installment #2 Due:     **July 31st, 2017**
Amount:                         243.53

**DUES WILL BE CONSIDERED LATE AS OF August 31st** AND MAY INCUR LATE FEES if not paid.  Please make your check payable to Sawnee View Farms HOA (please include your lot number on the check).  You may mail your payment to the above address.

Thank you, in advance, for your timely attention in this matter.  Should you have any questions in this matter please feel free to contact any Board member.

Please mail or give directly to a Board member.  DO NOT place in any mail box due to safety and Federal Laws pertaining to mail delivery.

Thank you,
Your 2017 HOA Board

Chris Patten – President          678-947-4603          chris@patten-family.net
                                                                           svfhoacumming@gmail.com
open         – Vice President
Chad Giller  – Vice President                                     chadgiller@gmail.com
Geary Beaulieu – Treasurer     678-923-7839          gearybeauliev@yahoo.com
Margaret Estes – Secretary       678-947-6753          margaretestes@hotmail.com
                                                 404-276-1388

THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD UP TO LIGHT TO VIEW

**WESTERN UNION WU**
moving money for better

WESTERN UNION FINANCIAL SERVICES INC. - ISSUER - Englewood, Colorado

**MONEY ORDER**

KROGER #432

Payable at Wells Fargo Bank Grand Junction - Downtown, N.A., Grand Junction, Colorado

17-62 3261692

A 374400 D 072117
L 1317 02
178232618928 L 000432      $ 243.53

PAY EXACTLY    TWO HUNDRED FORTY-THREE DOLLARS AND
               FIFTY-THREE CENTS

PAY TO THE
ORDER OF       *Saunee View Farms HOA*                    APARTMENT FOR/ACCT. #

               *2890 Willow* PURCHASER'S ADDRESS *Cumming, GA*
                                                *30040*

PURCHASER'S SIGNATURE
PURCHASED BY SIGNING YOU AGREE TO THE TERM ON THE REVERSE SIDE

⑈:⑈0 2⑈00⑈00⑈:  ⑈0⑈7623261692⑈8⑈

IN THE STATE COURT OF FORSYTH COUNTY
STATE OF GEORGIA

| | |
|---|---|
| SAWNEE VIEW FARMS<br>HOMEOWNERS ASSOCIATION INC, | )<br>)<br>) |
| Plaintiff, | ) Case No.: 16SC-0149-A<br>) |
| v. | ) ENTRY OF APPEARANCE<br>) |
| GLENN M HEAGERTY, | )<br>)<br>) |
| Defendant. | )<br>) |

## ENTRY OF APPEARANCE

COMES NOW John William Nelson and enters his appearance as attorney for

Defendant GLENN M. HEAGERTY in the above-styled matter.

Respectfully submitted this 28th day of June, 2018.

JOHN WILLIAM NELSON
State Bar No. 920108
*Attorney for Defendant*

The Nelson Law Chambers LLC
2180 Satellite Blvd, Suite 400
Duluth, GA 30097
(404) 348-4462
(404) 549-6765 Fax
*Attorney for Defendant*

EXHIBIT
2

1

IN THE STATE COURT OF FORSYTH COUNTY
STATE OF GEORGIA

| | |
|---|---|
| SAWNEE VIEW FARMS<br>HOMEOWNERS ASSOCIATION INC,<br><br>       Plaintiff,<br><br>       v.<br><br>GLENN M HEAGERTY,<br><br>       Defendant. | )<br>)<br>)<br>)  Case No.: 16SC-0149-A<br>)<br>)  CERTIFICATE OF SERVICE<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served Plaintiff and Garnishee with a copy of the foregoing ENTRY OF APPEARANCE by mailing a copy of the same to its attorney of record at the addresses shown below in a properly addressed envelope with adequate postage thereon:

Brandon D. Wagner, Esq.
LUEDER LARKIN & HUNTER LLC
5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005

This 28th day of June, 2018.

JOHN WILLIAM NELSON
The Nelson Law Chambers LLC
2180 Satellite Blvd, Suite 400
Duluth, GA 30097

1

(Page 1 of 32)

*Had to Corts*
BK __1184__
PG __699__

BK __1523__
PG __726__ __614__
*con. 7-6-99*
*D.G.*

Forsyth County
Clerks Office Superior Court,
Filed for record on the __28__
day of __Dec__ 19 __94__
at __10:50__ o'clock a M, Recorded in
Book __714__ Page __98 - 103__ this
day of __31 Dec__, 19 __94__
__Lou? McClure__, Clerk

*Rtfr Rd To:*
*Grace Development Corp*
*4320 Roswell Rd.*
*Atlanta       30342*

# DECLARATION

## OF

## PROTECTIVE

## COVENANTS

## FOR

## SAWNEE VIEW FARMS

EXHIBIT
3

and disposing of tangible personal property nor from acquiring or disposing of real property which may or may not be subject to this Declaration.

### Article III
### Association Membership and Voting Rights

3.1    Membership. Every Person who is the Owner of a Lot subject to this Declaration shall be a Member of the Association. No Owner, whether one or more Persons, shall have more than one membership per Lot. In the event of multiple owners of a Lot, votes and rights of use and enjoyment shall be as provided in this Declaration and in the By-Law, and all co-Owners shall be jointly and severally obligated to perform the responsibilities of Owners. Membership shall be appurtenant to and may not be separated from ownership of any Lot. The rights and privileges of membership, may be exercised as the Owner(s) shall agree, but in no event shall more than one vote be cast nor office held for each Lot owned.

3.2    Voting. Members shall be entitled to one vote for each Lot owned. When more than  one Person holds an ownership interest in any Lot, the vote for such Lot shall be exercised as those Owners themselves determine and advise the Secretary prior to any meeting. In the absence of such advice, the Lot's vote shall be suspended in the event more than one Person seeks to exercise it.

### Article IV
### Assessments

4.1    Assessment Obligations. Assessments shall be used for promoting the health, safety, welfare, common benefit, and enjoyment of the Owners and the maintenance of the Area of Common Responsibility.  Each Owner of any  Lot, by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, covenants and agrees to pay to the Association; (a) annual assessments; (b) special assessments; and (c) specific assessments which include, without limitation, fines as may be imposed in accordance with the terms of this Declaration. All such assessments, together with late charges, interest, not to exceed 18% per annum on the principal amount due, costs, and reasonable attorney's fees actually incurred, shall be a charge on the land and shall be a continuing lien upon the Lot against which each assessment is made. Each such assessment, together with late charges, interest, costs, and reasonable attorney's fees actually incurred, shall also be the personal obligation of the person who was the Owner of such Lot at the time the assessment fee became due. Each Owner shall be personally liable for the portion of each assessment coming due while the Owner of a Lot, and each grantee of any Owner shall be jointly and severally liable for such portion thereof as may be due and payable at the time of conveyance; provided, however, the liability of a grantee for the unpaid assessments of its grantor shall not apply to any first Mortgagee taking title through foreclosure proceedings or deed in lieu of foreclosure.

-4-



(Page 9 of 32)



The Association shall, within five days after receiving a written request therefor and for a reasonable charge, furnish a certificate signed by an officer of the Association setting forth whether the assessments on a specified Lot have been paid. A property executed certificate of the Association as to the status assessments on a Lot shall be binding upon the Association as of the date of issuance.

Annual assessments shall be levied equally on all similarly situated Lots and shall be paid in such manner and on such dates as may be fixed by the Board. The Association may, upon 10 days written notice, accelerate the annual assessment for delinquents. Unless otherwise provided by the Board, the assessment shall be paid in annual installments.

4.2     Computation. The Board shall prepare a budget covering the estimated costs of operating the Association for the coming year. The Board shall cause the budget to be levied equally against each Lot. The Board shall deliver to each member a copy of the budget and a notice of assessment for the following year at least 30 days prior to the end of the current fiscal year. The budget and the assessment shall become effective unless disapproved at a meeting by the majority of the Total Association Vote. If the membership disapproves the proposed budget or the Board fails for any reason so to determine the budget for the succeeding year, then and until such time as a budget shall have been determined, as provided herein, the budget in effect for the then current year shall continue for the succeeding year.

4.3     Special Assessments. The Association may levy special assessments from time to time in any given year. So long as the total amount of special assessments allocatable to each Lot does not exceed $300.00 in any one fiscal year, the Board may impose the special assessment. Any special assessment which would exceed $300.00 in any one fiscal year shall be approved at a meeting by two-thirds (2/3) of the Total Association Vote. Special assessments shall be paid as determined by the Board, and the Board may permit special assessments to be paid in installments extending beyond the fiscal year in which the special assessment is imposed.

4.4     Specific Assessments. The Board shall have the power to specifically assess Lots for fines levied pursuant to Section 12.1 and the costs of maintenance performed by the Association which the Owner is responsible for under Sections 5.1 and 5.2. Failure of the Board to exercise its authority under this Section shall not be grounds for any action against the Association or the Board and shall not constitute a waiver of the Board's right to exercise its authority under this Section in the future with respect to any expenses. The Board may also specifically assess Owners for benefits and services (including, without limitation, lawn maintenance) provided to Lot Owners or other Association expenses (except for expenses incurred for maintenance and repair of items which are the maintenance responsibility of the Association as provided herein). The Board may allocate such specific assessments among all of the Lots which are benefitted according to the benefit received.

4.5     Lien for Assessments. All sums assessed against any Lot pursuant to this Declaration, together with late charges, interest, costs, including, without limitation, reasonable attorney's fees actually incurred, shall be secured by a lien on such Lot in favor of the Association. Such lien shall be superior to all other liens and encumbrances on such Lot, except for (a) liens for ad valorem taxes; or (b) liens for all sums unpaid on a first Mortgage or on any Mortgage to Declarant duly recorded in the land records of the county where the Community is

-5-



located and all amounts advanced pursuant to such Mortgage and secured thereby in accordance with the terms of such instrument.

All other Persons acquiring liens or encumbrances on any Lot after this Declaration has been recorded shall be deemed to consent that such liens or encumbrances shall be inferior to future liens for assessments, as provided herein, whether or not prior consent is specifically set forth in the instruments creating such liens or encumbrances.

4.6   Effect of Nonpayment of Assessments: Remedies of the Association.  Any assessments or installments thereof which are not paid when due shall be delinquent.  Any assessment or installment thereof delinquent for a period of more than 10 days shall incur a late charge in any amount as the Board may from time to time determine.  The Association may cause a notice of delinquency to be given to any member who has not paid within 10 days following the due date.  If the assessment is not paid within 30 days, a lien shall attach, which shall include late charges, interest, not to exceed 18% per annum on the principal amount due, costs, and reasonable attorney's fees actually incurred, and any other amounts provided or permitted by law.  In the event that the assessment remains unpaid after 60 days, the Association may, as the Board shall determine, institute suit to collect such amounts and/or to foreclose its lien.  Each Owner, by acceptance of a deed or as a party to any other type of a conveyance, vests in the Association or its agents the right and power to bring all actions against such Owner personally, for the collection of such charges as a debt or to foreclose the aforesaid lien in the same manner as other liens for the improvement of real property.  The lien provided for in this Article shall be in favor of the Association and shall be for the benefit of all other Owners.  The Association, acting on behalf of the Owners, shall have the power to bid on the Lot at any foreclosure sale or to acquire, hold, lease, mortgage, or convey the same.

No Owner may waive or otherwise exempt himself from liability for the assessments provided for herein, including, by way of illustration, but not limitation, abandonment of the Lot. No diminution or abatement of any assessment shall be claimed or allowed by reason of any alleged failure of the Association to take some action or perform some function required to be taken or performed by the Association under this Declaration or the By-Laws, or for inconvenience or discomfort arising from the making of repairs or improvements which are the responsibility of the Association, or from any action taken by the Association to comply with any law, ordinance, or with any order or directive of any municipal or other governmental authority, the obligation to pay assessments being a separate and independent covenant on the part of each Owner.

All payments shall be applied first to costs and attorneys fees, then to late charges, then to interest and then to delinquent assessments.

4.7      Date of Commencement of Assessments.  The assessments shall commence on each Lot on the first day of the month following the closing of a Lot after the issuance of a certificate of occupancy.  The first annual assessment shall be adjusted according to the number of months then remaining in that fiscal year.  Subsequent assessments shall be due and payable on the first business day of the Association's fiscal year, unless provided otherwise by the Board of Directors.

-6-



(Page 11 of 32)

4.8     Budget Deficits During Declarant Control.  For so long as the Declarant owns any property subject to this Declaration or at such early time as Declarant may elect pursuant to Paragraph 12.16 hereof, Declarant may, but shall not be obligated to: (i) advance funds to the Association sufficient to satisfy the deficit, if any, between the actual operating expenses of the Association (but specifically not including an allocation for capital reserves),  and the sum of the annual, special and specific assessments collected by the Association in any fiscal year, and such advances shall be evidenced by promissory notes from the Association in favor of the Declarant; or (ii) cause the Association to borrow such amount from a commercial lending institution  at the then prevailing rates for such a loan in the local area of the Community.  The Declarant in its sole discretion may guarantee repayment of such loan, if required by the lending institution, but no Mortgage secured by the Common Property or any of the improvements maintained by the Association shall be given in connection with such loan.

**Article V**
**Maintenance: Conveyance of Common Property to Association**

5.1     Association's Responsibility.  The Association shall maintain and keep in good repair the Area of Common Responsibility.  This maintenance shall include, without limitation, maintenance, repair, and replacement of all landscaping and improvements situated on the Common Property and the Area of Common Responsibility.  The Association shall maintain as a portion of the Area of Common Responsibility all entry features and landscaping to the Community which may be designated as an "Association Landscape Easement" on the recorded subdivision plat, in a deed of conveyance of a Lot to any owner, or by recorded easement.  Such maintenance shall include, without limitation, the expenses for water, gas, and electricity, if any, provided to all such entry features, whether or not located on the Common Property or a Lot.  Additionally, the Association shall maintain all storm water drainage, retention and detention facilities, including, without limitation, fences and improvements constituting a part of such facilities, serving the Community and all property outside of Lots located within the Community which was originally maintained by Declarant.

The Association shall have the right, but not the obligation, to maintain portions of Lots and other property not owned by the Association, whether within or without the Community, where the Board has determined that such maintenance would benefit all Owners.  The Association may, in its sole discretion, enter into agreements with Lot Owners to provide maintenance services on the Lots.  The expense to the Association, as agreed upon by the parties, shall be a specific assessment as provided in Section 4.4.

Notwithstanding the foregoing, in the event that the Association determines that the need for Association maintenance, repair, or replacement is caused through the willful or negligent act of an Owner, or the family, guests, lessees, or invites of any Owner, and is not covered or paid for by insurance, in whole or in part, then the Association may perform such maintenance, repair or replacement at such Owner's sole cost and expense, and all costs thereof shall be added to and become a part of the assessment to which such Owner is subject and shall become a lien against the Lot of such Owner.

-7-



**Brandon D. Wagner**

| | |
|---|---|
| **From:** | John Lueder |
| **Sent:** | Tuesday, June 26, 2018 11:53 AM |
| **To:** | john@nelsonchambers.com |
| **Cc:** | Brandon D. Wagner |
| **Subject:** | Threatened FDCPA claim against this firm by Glenn M. Heagerty, Jr. |
| **Attachments:** | Rule 11 Order - Heagerty.pdf |

Mr. Nelson

I received your voicemail message from yesterday afternoon in which you stated that you believe Mr. Heagerty has a potential FDCPA claim against this firm. I am assuming you are aware that after this firm filed a lawsuit against Mr. Heagerty on behalf of Sawnee View Farms Homeowners Association, Inc., your client responded by filing a Bar complaint against the attorney in that case, Brandon Wagner. The Bar complaint was baseless and was dismissed. Mr. Heagerty then threatened to file complaints with the Consumer Financial Protection Bureau and the Governor's Office of Consumer Affairs. He additionally filed an FDCPA lawsuit in federal court against this firm, Brandon Wagner, and various staff members. He filed the federal lawsuit *pro se* and then later hired a different attorney who had no idea of his continuing shenanigans. His FDCPA case was completely without merit and was dismissed by the federal court in response to our motion to dismiss. The federal court additionally granted Rule 11 sanctions against Mr. Heagerty. The attached Rule 11 order includes the following on page five:

> It is clear that plaintiff [Mr. Heagerty] filed this action for both an improper purpose and without a reasonable factual or legal basis. The contentions about his *pro se* status do nothing to change this. With *any* investigation, plaintiff knew or should have known that his contentions lacked any merit under the FDCPA. It is obvious even to the most casual observer that plaintiff filed this action in an effort to harass defendants and extort a settlement in, or as a countermeasure for, the actions by the homeowners association in the state court. This conclusion is also consistent with the character of plaintiff's other filings in this court. As such, the court will grant defendants' motion for sanctions.

You will note that the federal court mentioned other filings in that court. Mr. Heagerty has a pattern of filing baseless federal litigation, including FDCPA lawsuits. The second footnote of the enclosed Rule 11 order includes two of his federal cases, which prompted the federal court to state that "[Mr. Heagerty sues] individuals and entities in an attempt to evade and intimidate his way out of financial obligations."

I am stating politely as I can that I have no interest in speaking with you regarding yet another alleged FDCPA claim by Mr. Heagerty. There is also no reason to email me anything about it. Our firm has not violated the FDCPA, and I have no interest in devoting any time to addressing that. That said, in the event that you do file an FDCPA lawsuit, we will defend against it. We received Rule 11 sanctions against Mr. Heagerty following his last FDCPA claim. I am sure the federal court will not look favorably on Mr. Heagerty continuing that behavior. Also, while I very much dislike making threats against other attorneys, we will pursue Rule 11 sanctions against you if you are involved in such action. While Mr. Heagerty's claims are frivolous, they do take our time in having to respond, and we will seek compensation of that time from you if you force us into that position. Please do not put us into that position. I really do not want to waste our time dealing with yet another FDCPA claim from Mr. Heagerty, and I prefer to not have to seek sanctions against another attorney.

If there are any issues you need to speak with Brandon Wagner about on behalf of your client (other than the threatened FDCPA claim), please feel free to call Brandon. He is copied on this email. I have had very minimal involvement regarding Mr. Heagerty. My one and only time speaking with him was a required conference after he sued us in federal court. He entered our conference room with confidence that our firm was going to pay him to dismiss the



suit, and after an appropriate amount of time and trying to show him his claim lacked merit, I ended the meeting.  We filed our motion to dismiss and our motion for Rule 11 sanctions.



**John Lueder**
Attorney at Law

**LUEDER, LARKIN & HUNTER, LLC**
5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005

Telephone: 770-685-7000
Facsimile: 770-685-7002
Email: johnlueder@luederlaw.com
Website: www.luederlaw.com

NOTICE: This message contains confidential information and is intended only for the addressee. If you are not the named addressee, you should not disseminate, distribute, or copy this email. Please notify the sender immediately by email if you have received this message by mistake, and delete this email from your system. Email transmission cannot be guaranteed to be secure or error-free as information can be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender does not accept liability for any errors or omissions in the contents of this message which arise as a result of email transmission. If verification is required, please request a hard-copy version.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I hereby certify that Defendant's Answer was prepared in Times New Roman 14 point font, double-spaced, with a top margin of not less than 1.5 inches and a left margin of not less than 1 inch.

_s/_ **John T. Lueder, Esq.**
John T. Lueder
Georgia Bar No. 460665
Attorney for Defendants
LUEDER, LARKIN & HUNTER, LLC
5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005
Telephone: (770) 685-7000
Facsimile: (770) 685-7002
Email: johnlueder@luederlaw.com

_s/_ **Brandon D. Wagner Esq.**
Brandon D. Wagner
Georgia Bar No. 768064
Attorneys for Defendants
LUEDER, LARKIN & HUNTER, LLC
5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005
Telephone: (770) 685-7000
Facsimile: (770) 685-7002
Email: bwagner@luederlaw.com

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing has been served upon the opposing party by e-mail to **john@nelsonchambers.com** and placing a copy of same in the U.S. Mail, proper postage affixed thereto, in an envelope addressed as follows:

John William Nelson
The Nelson Law Chambers, LLC
2180 Satellite Blvd.
Suite 400
Duluth, Georgia 30097

This ₁₀ day of August, 2018.

_s/_ **John T. Lueder, Esq.**
John T. Lueder
Georgia Bar No. 460665
Attorney for Defendants
LUEDER, LARKIN & HUNTER, LLC
5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005
Telephone: (770) 685-7000
Facsimile: (770) 685-7002
Email: johnlueder@luederlaw.com

_s/_ **Brandon D. Wagner Esq.**
Brandon D. Wagner
Georgia Bar No. 768064
Attorneys for Defendants
LUEDER, LARKIN & HUNTER, LLC
5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005
Telephone: (770) 685-7000
Facsimile: (770) 685-7002
Email: bwagner@luederlaw.com