(Page 1 of 32)
BEULU
0872

*LST*
BK *1523*
PG *630* 614
*com. 7-6-99*
*DG.*

*Pad to Corts*
BK *1184*
PG *699*

Forsyth County
Clerks Office Superior Court
Filed for record on the ___
day of ___ 19 __
at 2:00 o'clock __ M. Recorded in
Book *814* Page *72 - 103* this
day of *27 dec* 19 *54*
_____, Clerk

*Ply Rd 701*
*Grace Development Corp*
*1320 Roswell Rd*
*Atlanta        30342*

# DECLARATION

## OF

## PROTECTIVE

## COVENANTS

## FOR

## SAWNEE VIEW FARMS



EXHIBIT
1

TABLE OF CONTENTS

| ARTICLE | SECTION | | |
|---|---|---|---|
| 1. | Definitions | | |
| | 1.1 | Area of Common Responsibility | 1 |
| | 1.2 | Association | 1 |
| | 1.3 | Board of Directors or Board | 1 |
| | 1.4 | By-Laws | 1 |
| | 1.5 | Common Property | 2 |
| | 1.6 | Community | 2 |
| | 1.7 | Community-Wide | 2 |
| | 1.8 | Declarant | 2 |
| | 1.9 | Lot | 2 |
| | 1.10 | Member | 2 |
| | 1.11 | Mortgage | 2 |
| | 1.12 | Mortgagee | 2 |
| | 1.13 | Owner | 2 |
| | 1.14 | Person | 2 |
| | 1.15 | Supplemental Declaration | 2 |
| | 1.16 | Total Association Vote | 2 |
| 2. | Property Rights | | |
| | 2.1 | Common Property | 3 |
| | 2.2 | No Partition | 3 |
| 3. | Association Membership and Voting Rights | | |
| | 3.1 | Membership | 4 |
| | 3.2 | Voting | 4 |
| 4. | Assessments | | |
| | 4.1 | Assessment Obligations | 4 |
| | 4.2 | Computation | 5 |
| | 4.3 | Special Assessments | 5 |
| | 4.4 | Specific Assessments | 5 |
| | 4.5 | Lien for Assessments | 5 |
| | 4.6 | Effect of Nonpayment of Assessments: Remedies of the Association | 6 |
| | 4.7 | Date of Commencement of Assessments | 6 |
| | 4.8 | Budget Deficits During Declarant Control | 7 |

Page 1 of 3
Table of Contents



73



| ARTICLE | SECTION | |
|---------|---------|---|
| 5. | Maintenance; Conveyance of Common Property to Association | |
| | 5.1 | Association's Responsibility .................................... 7 |
| | 5.2 | Owner's Responsibility ........................................ 8 |
| | 5.3 | Conveyance of Common Property by Declarant to Association ... 8 |
| 6. | Architectural Standards | |
| | 6.1 | General ......................................................... 8 |
| | 6.2 | Architectural Review .......................................... 9 |
| | 6.3 | No Waiver of Future Approvals ............................. 10 |
| | 6.4 | Variance ...................................................... 10 |
| | 6.5 | Limitation of Liability ...................................... 10 |
| 7. | Use Restrictions and Rules | |
| | 7.1 | General ....................................................... 11 |
| | 7.2 | Residential Use .............................................. 11 |
| | 7.3 | Signs ......................................................... 11 |
| | 7.4 | Vehicles ...................................................... 11 |
| | 7.5 | Leasing ....................................................... 12 |
| | 7.6 | Occupants Bound ............................................. 12 |
| | 7.7 | Animals and Pets ............................................ 12 |
| | 7.8 | Nuisance ...................................................... 12 |
| | 7.9 | Unsightly or Unkempt Conditions .......................... 12 |
| | 7.10 | Prohibited Conditions ...................................... 13 |
| | 7.11 | Drainage ..................................................... 14 |
| | 7.12 | Sight Distance at Intersections ........................... 14 |
| | 7.13 | Garbage Cans, Woodpiles, Etc. ............................ 14 |
| | 7.14 | Subdivision of Lot ......................................... 14 |
| | 7.15 | Guns .......................................................... 14 |
| | 7.16 | Fences ....................................................... 14 |
| | 7.17 | Mailboxes .................................................... 15 |
| | 7.18 | Exteriors ..................................................... 15 |
| | 7.19 | Entry Features and Boundary Fences ...................... 15 |
| | 7.20 | Plat Restrictions ........................................... 15 |
| | 7.21 | Additional Restrictions and Requirements ................. 15 |
| 8. | Insurance and Casualty Losses | |
| | 8.1 | Association Insurance ....................................... 16 |
| | 8.2 | Owner's Insurance ........................................... 19 |

Page 2 of 3
Table of Contents



| ARTICLE | SECTION | | |
|---------|---------|---|---|
| 9. | Annexation of Additional Property | | |
| | 9.1 | Unilateral Annexation by Declarant | 20 |
| | 9.2 | Other Annexation | 20 |
| 10. | Mortgage Provisions | | |
| | 10.1 | Notices of Action | 20 |
| | 10.2 | No Priority | 21 |
| | 10.3 | Notice to Association | 21 |
| | 10.4 | VA/HUD Approval | 21 |
| | 10.5 | Applicability of Article X | 21 |
| | 10.6 | Amendments by Board | 21 |
| 11. | Easements | | |
| | 11.1 | Easements for Encroachment and Overhang | 21 |
| | 11.2 | Easements for Utilities | 22 |
| | 11.3 | Easements for Entry | 22 |
| | 11.4 | Easements for Maintenance | 22 |
| | 11.5 | Easements for Entry Features | 22 |
| | 11.6 | Construction and Sale Period Easement | 23 |
| 12. | General Provisions | | |
| | 12.1 | Enforcement | 23 |
| | 12.2 | Self-Help | 24 |
| | 12.3 | Duration | 24 |
| | 12.4 | Amendment | 24 |
| | 12.5 | Gender and Grammar | 25 |
| | 12.6 | Severability | 25 |
| | 12.7 | Captions | 25 |
| | 12.8 | Perpetuities | 25 |
| | 12.9 | Indemnification | 25 |
| | 12.10 | Notice of Sale, Lease or Acquisition | 25 |
| | 12.11 | Agreements | 25 |
| | 12.12 | Implied Rights | 26 |
| | 12.13 | Variances | 26 |
| | 12.14 | Litigation | 26 |
| | 12.15 | Inconsistency | 26 |
| | 12.16 | Rights of Declarant | 26 |
| | 12.17 | Appointment of Officers and Directors | 26 |

Page 3 of 3
Table of Contents

(Page 5 of 32)

116
76

### DECLARATION OF PROTECTIVE COVENANTS

### FOR

### SAWNEE VIEW FARMS SUBDIVISION

This DECLARATION is made on the date hereinafter set forth by CONRAD MORTGAGE CORPORATION, a Georgia corporation ("Declarant");

#### WITNESSETH:

WHEREAS, Declarant is the owner of the real property described in Exhibit "A";

WHEREAS, Declarant desires to subject the real property described in Exhibit "A" to the provisions of this Declaration and to provide for subjecting to the provisions of this Declaration all or any portion of any real property immediately adjacent to the Community (as hereinafter defined) as the Declarant, in its sole discretion, so desires:

NOW, THEREFORE, Declarant declares that the real property described in Exhibit "A" is subjected to the provisions of this Declaration. Such property shall be held, sold, transferred, conveyed, used, occupied, and encumbered subject to the covenants, conditions, restrictions and easements, which shall run with the title to the real property hereby or hereafter made subject to this Declaration. This Declaration shall be binding on all persons having any right, title or interest in all or any portion of the real property now or hereafter made subject hereto, their respective heirs, legal representatives, successors, successors-in-title, and assigns and shall insure to the benefit of each and every owner of all or any portion thereof.

#### Article I
#### Definitions

The terms in this Declaration shall generally be given their commonly accepted definitions except as otherwise specified. Capitalized terms shall be defined as set forth below.

1.1     "Area of Common Responsibility". The Common Property, together with such other areas, if any, for which the Association has responsibility pursuant to this Declaration, any Supplemental Declaration, recorded plat, or other applicable covenants, contract or agreement, less and except any portion of the Common Property dedicated to the public.

1.2     "Association". The Sawnee View Farms Homeowners Association, Inc., a Georgia nonprofit corporation, its successors and assigns.

1.3     "Board of Directors" or "Board". The appointed or elected body, as applicable, having its normal meaning under Georgia law.

1.4     "By-Laws". The By-Laws of The Sawnee View Farms Homeowners Association, Inc.

-1-





1.5    "Common Property". The real or personal property which the Association owns, leases, or otherwise holds possessory or use rights for the common use and enjoyment of the Owners.

1.6    "Community". The real property and interests subject to this Declaration described in Exhibit "A", and such additional property as may be made subject to this Declaration as provided herein.

1.7    "Community-Wide Standard". The standard of conduct, maintenance, or other activity generally prevailing in the Community as determined by the Board which is consistent with the standard originally established by the Declarant.

1.8    "Declarant". Conrad Mortgage Corporation, a Georgia corporation, or any successor, successor-in-title, or assign who takes title to any portion of the property described on Exhibit "A" and who is designated as the Declarant in a recorded instrument executed by the immediately preceding Declarant.

1.9    "Lot". Any plot of land within the Community, whether or not improvements are constructed thereon, intended for development, use, and occupancy as an attached or detached residence for a single family dwelling as shown on a plat recorded in the land records of the county where the Community is located. The ownership of each Lot shall include, and there shall pass with each Lot as an appurtenance thereof, whether or not separately described, all of the right, title and interest of a member of the Association with a right of access, ingress and egress over the Common Property.

1.10    "Member". A Person entitled to membership in the Association pursuant to Section 3.1.

1.11    "Mortgage". A mortgage, a deed of trust, a deed to secure debt, or any other form of security instrument affecting title to a Lot.

1.12    "Mortgagee". The holder of a Mortgage.

1.13    "Owner". The record owner(s) of the fee simple title to any Lot located within the Community, excluding any Mortgagee.

1.14    "Person". A natural person, a corporation, a partnership, a trustee, or any other legal entity.

1.15    "Supplemental Declaration". An instrument which subjects additional property to this Declaration and which is recorded in the land records of the county where the Community is located.

1.16    "Total Association Vote". All of the votes attributable to Members of the Association (otherwise than votes of Declarant) and the consent of Declarant (so long as Declarant owns any property subject to this Declaration or at such early time as Declarant may elect pursuant to Paragraph 12. 16 hereof).

-2-

116
7B

## Article II
## Property Rights

2.1   <u>Common Property</u>.  Every Owner of a Lot shall have a right and easement of ingress and egress, use and enjoyment in and to the Common Property, if any, which shall be appurtenant to and shall pass with the title of each lot, subject to:

(a)   This Declaration and any other applicable covenants;

(b)   Any restrictions or limitations contained in any deed conveying such property to the Association;

(c)   The right of the Board to adopt rules regulating the use and enjoyment of the Common Property;

(d)   The right of the Association to suspend the voting rights of a Lot Owner for any period during which any assessment against such Owner's Lot which is hereby provided for remains unpaid and for a reasonable period of time for an infraction of the Declaration, By-Laws, or rules and regulations;

(e)   The right of the Association to borrow money for the purpose of improving the Common Property, or to be located thereon, and to give as security for the payment of any such loan a Mortgage conveying all or any portion of the Common Property; provided, however, the lien and encumbrance of any such Mortgage given by the Association shall be subject and subordinate to any rights, interests, options, easements and privileges herein reserved or established for the benefit of Declarant, any Lot Owner, or the holder of any Mortgage; and

(f)   The right of the Association to dedicate or transfer all or any portion of the Common Property subject to such conditions as may be agreed to be the members of the Association.  No such dedication or transfer shall be effective unless an instrument agreeing to such dedication or transfer has been approved by the affirmative vote of at least two-thirds (2/3) of the Total Association Vote.

Any Lot Owner may delegate such Owner's right of use and enjoyment in and to the Common Property and facilities located thereon to the members of such. Owner's family living in the dwelling constructed on the Lot and to such Owners' tenants.  Owner shall be deemed to have made a delegation of all such rights to the occupants of such Owner's Lot, if leased.

2.2   <u>No Partition</u>.  Except as permitted in this Declaration, there shall be no judicial partition of the Common Property.  No Person shall seek any judicial partition unless the portion of the Common Property which is the subject of such partition action as been removed form the provisions of this Declaration.  This Articles shall not prohibit the Board from acquiring

-3-

and disposing of tangible personal property nor from acquiring or disposing of real property which may or may not be subject to this Declaration.

**Article III**
**Association Membership and Voting Rights**

3.1     Membership. Every Person who is the Owner of a Lot subject to this Declaration shall be a Member of the Association. No Owner, whether one or more Persons, shall have more than one membership per Lot. In the event of multiple owners of a Lot, votes and rights of use and enjoyment shall be as provided in this Declaration and in the By-Law, and all co-Owners shall be jointly and severally obligated to perform the responsibilities of Owners. Membership shall be appurtenant to and may not be separated from ownership of any Lot. The rights and privileges of membership, may be exercised as the Owner(s) shall agree, but in no event shall more than one vote be cast nor office held for each Lot owned.

3.2     Voting. Members shall be entitled to one vote for each Lot owned. When more than one Person holds an ownership interest in any Lot, the vote for such Lot shall be exercised as those Owners themselves determine and advise the Secretary prior to any meeting. In the absence of such advice, the Lot's vote shall be suspended in the event more than one Person seeks to exercise it.

**Article IV**
**Assessments**

4.1     Assessment Obligations. Assessments shall be used for promoting the health, safety, welfare, common benefit, and enjoyment of the Owners and the maintenance of the Area of Common Responsibility. Each Owner of any Lot, by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, covenants and agrees to pay to the Association: (a) annual assessments; (b) special assessments; and (c) specific assessments which include, without limitation, fines as may be imposed in accordance with the terms of this Declaration. All such assessments, together with late charges, interest, not to exceed 18% per annum on the principal amount due, costs, and reasonable attorney's fees actually incurred, shall be a charge on the land and shall be a continuing lien upon the Lot against which each assessment is made. Each such assessment, together with late charges, interest, costs, and reasonable attorney's fees actually incurred, shall also be the personal obligation of the person who was the Owner of such Lot at the time the assessment fee became due. Each Owner shall be personally liable for the portion of each assessment coming due while the Owner of a Lot, and each grantee of any Owner shall be jointly and severally liable for such portion thereof as may be due and payable at the time of conveyance; provided, however, the liability of a grantee for the unpaid assessments of its grantor shall not apply to any first Mortgagee taking title through foreclosure proceedings or deed in lieu of foreclosure.

-4-



(Page 9 of 32)



The Association shall, within five days after receiving a written request therefor and for a reasonable charge, furnish a certificate signed by an officer of the Association setting forth whether the assessments on a specified Lot have been paid. A properly executed certificate of the Association as to the status assessments on a Lot shall be binding upon the Association as of the date of issuance.

Annual assessments shall be levied equally on all similarly situated Lots and shall be paid in such manner and on such dates as may be fixed by the Board. The Association may, upon 10 days written notice, accelerate the annual assessment for delinquents. Unless otherwise provided by the Board, the assessment shall be paid in annual installments.

4.2     Computation. The Board shall prepare a budget covering the estimated costs of operating the Association for the coming year. The Board shall cause the budget to be levied equally against each Lot. The Board shall deliver to each member a copy of the budget and a notice of assessment for the following year at least 30 days prior to the end of the current fiscal year. The budget and the assessment shall become effective unless disapproved at a meeting by the majority of the Total Association Vote. If the membership disapproves the proposed budget or the Board fails for any reason so to determine the budget for the succeeding year, then and until such time as a budget shall have been determined, as provided herein, the budget in effect for the then current year shall continue for the succeeding year.

4.3     Special Assessments. The Association may levy special assessments from time to time in any given year. So long as the total amount of special assessments allocatable to each Lot does not exceed $300.00 in any one fiscal year, the Board may impose the special assessment. Any special assessment which would exceed $300.00 in any one fiscal year shall be approved at a meeting by two-thirds (2/3) of the Total Association Vote. Special assessments shall be paid as determined by the Board, and the Board may permit special assessments to be paid in installments extending beyond the fiscal year in which the special assessment is imposed.

4.4     Specific Assessments. The Board shall have the power to specifically assess Lots for fines levied pursuant to Section 12.1 and the costs of maintenance performed by the Association which the Owner is responsible for under Sections 5.1 and 5.2. Failure of the Board to exercise its authority under this Section shall not be grounds for any action against the Association or the Board and shall not constitute a waiver of the Board's right to exercise its authority under this Section in the future with respect to any expenses. The Board may also specifically assess Owners for benefits and services (including, without limitation, lawn maintenance) provided to Lot Owners or other Association expenses (except for expenses incurred for maintenance and repair of items which are the maintenance responsibility of the Association as provided herein). The Board may allocate such specific assessments among all of the Lots which are benefitted according to the benefit received.

4.5     Lien for Assessments. All sums assessed against any Lot pursuant to this Declaration, together with late charges, interest, costs, including, without limitation, reasonable attorney's fees actually incurred, shall be secured by a lien on such Lot in favor of the Association. Such lien shall be superior to all other liens and encumbrances on such Lot, except for (a) liens for ad valorem taxes; or (b) liens for all sums unpaid on a first Mortgage or on any Mortgage to Declarant duly recorded in the land records of the county where the Community is

-5-



located and all amounts advanced pursuant to such Mortgage and secured thereby in accordance with the terms of such instrument.

All other Persons acquiring liens or encumbrances on any Lot after this Declaration has been recorded shall be deemed to consent that such liens or encumbrances shall be inferior to future liens for assessments, as provided herein, whether or not prior consent is specifically set forth in the instruments creating such liens or encumbrances.

4.6  Effect of Nonpayment of Assessments; Remedies of the Association.  Any assessments or installments thereof which are not paid when due shall be delinquent.  Any assessment or installment thereof delinquent for a period of more than 10 days shall incur a late charge in any amount as the Board may from time to time determine.  The Association may cause a notice of delinquency to be given to any member who has not paid within 10 days following the due date.  If the assessment is not paid within 30 days, a lien shall attach, which shall include late charges, interest, not to exceed 18% per annum on the principal amount due, costs, and reasonable attorney's fees actually incurred, and any other amounts provided or permitted by law.  In the event that the assessment remains unpaid after 60 days, the Association may, as the Board shall determine, institute suit to collect such amounts and/or to foreclose its lien.  Each Owner, by acceptance of a deed or as a party to any other type of a conveyance, vests in the Association or its agents the right and power to bring all actions against such Owner personally, for the collection of such charges as a debt or to foreclose the aforesaid lien in the same manner as other liens for the improvement of real property.  The lien provided for in this Article shall be in favor of the Association and shall be for the benefit of all other Owners.  The Association, acting on behalf of the Owners, shall have the power to bid on the Lot at any foreclosure sale or to acquire, hold, lease, mortgage, or convey the same.

No Owner may waive or otherwise exempt himself from liability for the assessments provided for herein, including, by way of illustration, but not limitation, abandonment of the Lot.  No diminution or abatement of any assessment shall be claimed or allowed by reason of any alleged failure of the Association to take some action or perform some function required to be taken or performed by the Association under this Declaration or the By-Laws, or for inconvenience or discomfort arising from the making of repairs or improvements which are the responsibility of the Association, or from any action taken by the Association to comply with any law, ordinance, or with any order or directive of any municipal or other governmental authority, the obligation to pay assessments being a separate and independent covenant on the part of each Owner.

All payments shall be applied first to costs and attorneys fees, then to late charges, then to interest and then to delinquent assessments.

4.7     Date of Commencement of Assessments.  The assessments shall commence on each Lot on the first day of the month following the closing of a Lot after the issuance of a certificate of occupancy.  The first annual assessment shall be adjusted according to the number of months then remaining in that fiscal year.  Subsequent assessments shall be due and payable on the first business day of the Association's fiscal year, unless provided otherwise by the Board of Directors.

-6-



(Page 11 of 32)

4.8    Budget Deficits During Declarant Control.  For so long as the Declarant owns any property subject to this Declaration or at such early time as Declarant may elect pursuant to Paragraph 12.16 hereof, Declarant may, but shall not be obligated to: (i) advance funds to the Association sufficient to satisfy the deficit, if any, between the actual operating expenses of the Association (but specifically not including an allocation for capital reserves),  and the sum of the annual, special and specific assessments collected by the Association in any fiscal year, and such advances shall be evidenced by promissory notes from the Association in favor of the Declarant; or (ii) cause the Association to borrow such amount from a commercial lending institution  at the then prevailing rates for such a loan in the local area of the Community.  The Declarant in its sole discretion may guarantee repayment of such loan, if required by the lending institution, but no Mortgage secured by the Common Property or any of the improvements maintained by the Association shall be given in connection with such loan.

### Article V
### Maintenance: Conveyance of Common Property to Association

5.1    Association's Responsibility.  The Association shall maintain and keep in good repair the Area of Common Responsibility.  This maintenance shall include, without limitation, maintenance, repair, and replacement of all landscaping and improvements situated on the Common Property and the Area of Common Responsibility.  The Association shall maintain as a portion of the Area of Common Responsibility all entry features and landscaping to the Community which may be designated as an "Association Landscape Easement" on the recorded subdivision plat, in a deed of conveyance of a Lot to any owner, or by recorded easement.  Such maintenance shall include, without limitation, the expenses for water, gas, and electricity, if any, provided to all such entry features, whether or not located on the Common Property or a Lot.  Additionally, the Association shall maintain all storm water drainage, retention and detention facilities, including, without limitation, fences and improvements constituting a part of such facilities, serving the Community and all property outside of Lots located within the Community which was originally maintained by Declarant.

The Association shall have the right, but not the obligation, to maintain portions of Lots and other property not owned by the Association, whether within or without the Community, where the Board has determined that such maintenance would benefit all Owners.  The Association  may, in its sole discretion, enter into agreements with Lot Owners to provide maintenance services on the Lots.  The expense to the Association, as agreed upon by the parties, shall be a specific assessment as provided in Section 4.4.

Notwithstanding the foregoing, in the event that the Association determines that the need for Association maintenance, repair, or replacement is caused through the willful or negligent act of an Owner, or the family, guests, lessees, or invitee of any Owner, and is not covered or paid for by insurance, in whole or in part, then the Association may perform such maintenance, repair or replacement at such Owner's sole cost and expense, and all costs thereof shall be added to and become a part of the assessment to which such Owner is subject and shall become a lien against the Lot of such Owner.

-7-



Association maintenance shall be performed consistent with the Community-Wide Standard.

5.2     Owner's Responsibility. Except as provided in Section 5.1, all maintenance of the Lots and all structures, parking areas landscaping, and other improvements thereon shall be the sole responsibility of the Owner thereof, who shall maintain such Lot in a manner consistent with the Community-Wide Standard and this Declaration. Notwithstanding the foregoing, no Owner shall maintain, interfere, or disturb an Association Landscape Easement identified on a recorded subdivision plat, deed of conveyance, or recorded easement, unless the Owner obtains prior written consent from the Board or the Architectural Review Committee.

If and to the extent the Association offers Lot maintenance services, certain Lot maintenance responsibilities of an Owner may be transferred to the Association by agreement. Notwithstanding such agreement, the Owner shall remain responsible to ensure the Lot is maintained to the Community-Wide Standard.

In the event that the Board determines that any Owner has failed or refused to discharge properly any of such Owner's obligations with regard to the maintenance, repair or replacement of items for which such Owner is responsible, the Association shall, except in am emergency situation, give the Owner written notice of the Association's intent to provide such necessary maintenance, repair, or replacement at the Owner's sole cost and expense. The notice shall set forth with reasonable particularity the maintenance, repairs, or replacement deemed necessary. The Owner shall have 10 days after receipt of such notice within which to complete such maintenance, repair, or replacement, or, in the event that such maintenance, repair, or replacement is not capable of completion with a 10 day period, to commence such work which shall be completed within a reasonable time. If any Owner does not comply with the provisions hereof, the Association may provide any such maintenance, repair, or replacement at such Owner's sole cost and expense, and all costs shall be added to and become a part of the assessment to which such Owner is subject and shall become a lien against the Lot.

5.3     Conveyance of Common Property by Declarant to Association. The Declarant may transfer or convey to the Association any personal property and any improved or unimproved real property, leasehold, easement, or other property interest located within the Community. Such conveyance shall be accepted by the Association, and the property shall thereafter be Common Property to be maintained by the Association for the benefit of all or a part of its members. Declarant shall not be required to make any improvements whatsoever to property to be conveyed and accepted pursuant to this Section.

### Article VI
### Architectural Standards

6.1     General. No structure shall be placed, erected, or installed upon any Lot, and no improvements (including staking, clearing, excavation, grading and other site work, exterior alteration of existing improvement, and planting or removal of landscaping materials) shall take place except in compliance with this Article, and approval of the Architectural Review Committee ("ARC").

-8-

(Page 13 of 32)
8884



No work subject to this Article shall commence unless and until plans and specifications showing at least the nature, kind, shape, height, materials, and location shall have been submitted in writing to and approved by the ARC. Any Owner may remodel, paint or redecorate the interior of structures on a Lot without approval. However, modifications to the interior of screened porches, patios, and similar portions of a Lot visible from outside the structures on the Lot shall be subject to approval. No approval shall be required to repair the exterior of a structure in accordance with the originally approved color scheme or to rebuild in accordance with originally approved plans and specifications.

All dwellings constructed on any portion of the Community shall be designed by and build in accordance with the plans and specifications of a licensed architect, unless otherwise acceptable to the ARC, in its sole discretion. All plans and specifications shall be subject to review as provided herein.

6.2   Architectural Review. Review of all applications for construction and modifications under this Article shall be handled by the ARC. The ARC may be divided into 2 subcommittees, with 1 subcommittee having jurisdiction over modifications and the other having jurisdiction over new construction. For so long as Declarant owns any property subject to this Declaration, or such earlier time as the Declarant shall designate in writing, the Declarant shall have the right to appoint all members of the ARC. Upon the expiration or earlier surrender in writing of such right, the Board shall appoint the members of the ARC. Upon the expiration or earlier surrender in writing of such right, the Board shall appoint the members of the ARC. Written design guidelines and procedures may be promulgated for the exercise of this review. The ARC may establish and charge reasonable fees for review of applications hereunder and may require such fees to be paid in full prior to review of any application. The Board may employ architects, engineers, or other Persons as it deems necessary to enable the ARC to perform its review. The ARC may, from time to time, delegate any of its rights or responsibilities hereunder to 1 or more duly licensed architects or other qualified Persons, which shall have full authority to act on behalf of the committee for all matters delegated.

In reviewing each submission, the ARC may consider the quality of workmanship and design, harmony of external design with existing structures, and location in relation to surrounding structures, topography, and finish grade elevation, among other things. The ARC shall be the sole arbiter of such plans and may withhold approval for any reason, including purely aesthetic considerations, and it shall be entitled to stop any construction in violation of these restrictions. Each Owner acknowledges that opinions on aesthetic matters are subjective and may vary as ARC members change over time.

In the event that the ARC fails to approve or to disapprove in writing any application within 60 days after submission of all information and materials reasonably requested, the application shall be deemed approved. However, no approval, whether expressly granted or deemed granted pursuant to the foregoing, shall be inconsistent with established design guidelines for the Community unless a variance has been granted in writing by the ARC.

All work shall be competed within one year of commencement or such shorter period as the ARC may specify in the notice of approval. As a condition of approval under this Section each Owner and all successors-in-interest, shall assume all responsibilities for maintenance, repair, replacement, and insurance to and on any change, modification, addition, or alteration.

-9-





(Page 14 of 32)
00016
0085

The ARC may require an Owner to acknowledge such responsibilities in a recordable written instrument.

Any member of the Board or its representatives shall have the right, during reasonable hours and after reasonable notice, to enter upon any Lot to verify compliance with these restrictive covenants. Such Person or Persons shall not be deemed guilty of trespass by reason of such entry. In addition to any other remedies available to the Association, in the event of noncompliance with this Section, the Board may, as provided in Section 12.1, record in the appropriate land records a notice violation naming the violating Owner.

6.3   No Waiver of Future Approvals. Approval of proposals, plans and specifications, or drawings for any work done or proposed, or in connection with any other matter requiring approval, shall not be deemed to constitute a waiver of the right to withhold approval as to any similar proposals, plans and specifications, drawings, or other matters subsequently or additionally submitted for approval.

6.4   Variance. The ARC may authorize variances from compliance with any of its guidelines and procedures when circumstances such as topography, natural obstructions, hardship, or aesthetic or environmental consideration require, but only in accordance with duly adopted rules and regulations. Such variances may only be granted, however, when unique circumstances dictate and no variance shall (a) be effective unless in writing; (b) be contrary to this Declaration; or (c) estop the ARC from denying a variance in other circumstances. For purposes of this Section, the inability to obtain approval of any governmental agency, the issuance of any permit, or the terms of any financing shall not be considered a hardship warranting a variance.

6.5   Limitation of Liability. Plans and specifications are not approved for engineering or structural design or quality of materials, and by approving such plans and specifications neither the ARC, the members thereof, nor the Association assumes liability or responsibility therefor, nor for any defect in any structure constructed from such plans and specification. Neither Declarant, the Association, the ARC, the Board, nor the officers, directors, members, employees, and agents of any of them shall be liable in damages to any one submitting plans and specifications to any of them for approval, or to any Owner of property affected by these restrictions by reason of mistake in judgement, negligence, or nonfeasance arising out of or in connection with the approval or disapproval or failure to approve or disapprove any such plans or specifications. Every person who submits plans or specifications and every Owner agrees that such person or Owner will not bring any action or suit against Declarant, the Association, the ARC, the Board, or the officers, directors, members, employees, and agents of any of them to recover any damages and hereby releases, remises, quitclaims, and covenants not to sue for all claims, demands, and causes of action arising out of or in connection with any judgement, negligence, or nonfeasance and hereby waives the provisions of any law which provides that a general release does not extend to claims, demands, and causes of action not known at the time the release is given.

-10-



BS

(Page 15 of 32)
8886

### Article VII
### Use Restrictions and Rules

7.1    General. This Article sets out certain use restrictions which must be complied with by all Owners and occupants of any Lot. These use restrictions may only be amended in the manner provided in Section 12.4 regarding amendment of this Declaration. In addition, the Board may, from time to time, without consent of the Members, promulgate, modify, or delete additional use restrictions and rules and regulations applicable to the Community. Such use restrictions and rules shall be distributed to all Owners and occupants prior to the date that they are to become effective and shall thereafter be binding upon all Owners and occupants until and unless overruled, canceled, or modified in a regular or special meeting by a majority of the Total Association Vote.

7.2    Residential Use. All Lots shall be used exclusively for residential purposes of a single family. No business or business activity shall be carried on in or upon any Lot at any time except with the written approval of the Board. Leasing of a Lot shall not be considered a business or business activity. However, the Board may permit a Lot to be used for business purposes so long as such business, in the sole discretion of the Board, does not otherwise violate the provisions of the Declaration or By-Laws, does not create a disturbance and does not unduly increase traffic flow or parking congestion. The Board may issue rules regarding permitted business activities. Without limitation, no building shall be erected on any Lot to be used as a church, school, day care center or kindergarten, and no temporary house, shack, tent or trailer shall be erected on any Lot to be used as a school, church, day care center or kindergarten.

7.3    Signs. No sign or any kind shall be erected by an Owner or occupant within the Community without the prior written consent of the ARC. Notwithstanding the foregoing, the Board and the Declarant shall have the right to erect reasonable and appropriate signs. "For Sale" and "For Rent" signs and security signs consistent with the Community-Wide Standard and reasonable signs required by legal proceedings or pursuant to a First Mortgage may be erected upon any Lot.

7.4    Vehicles. The term "vehicles", as used herein, shall include, without limitation, motor homes, boats, trailers, motorcycles, minibikes, scooters, go-carts, trucks, campers, buses, vans, and automobiles. All vehicles shall be parked in designated parking spaces. Where the Lot contains a garage, "parking areas" shall refer to the number of garage parking spaces. All single-family detached homes shall contain a garage. Carports shall not be permitted. Garage doors shall be kept closed at all times, except during times of ingress and egress from the garage. No motorized vehicles shall be permitted on pathways or unpaved Common Property except for public safety vehicles authorized by the Board.

No vehicle may be left upon any portion of the Community, except in a garage or driveway for a period longer than 5 days if it is unlicensed or if it is in a condition such that it is incapable of being operated upon the public highways. After such 5 day period, such vehicle shall be considered a nuisance and may be removed from the Community. Any towed vehicle, boat, recreational vehicle, motor home, or mobile home regularly stored in the Community or temporarily kept in the Community, except if kept in a garage or other area designated by the Board, for periods longer than 24 hours each shall be considered a nuisance and may be removed from the Community. Trucks with mounted campers which are an Owner's or



-11-

occupant's primary means of transportation shall not be considered recreational vehicles, provided they are used on a regular basis for transportation and the camper is stored out of public view.

7.5     Leasing. Lots may be leased for residential purposes. All leases shall have a minimum term of at least 6 months. All leases shall require, without limitation, that the tenant acknowledge receipt of a copy of the Declaration, By-Laws, use restrictions, and rules and regulations of the Association. The lease shall also obligate the tenant to comply with the foregoing and shall provided that in the event of noncompliance, the Board, in addition to any other remedies available to it, may evict the tenant on behalf of the Owner and specifically assess all costs associated therewith against the Owner and the Owner's property.

7.6     Occupants Bound. All provisions of the Declaration, By-Laws, and of any rules and regulations, use restrictions or design guidelines governing the conduct of Owners and establishing sanctions against Owners shall also apply to all occupants even though occupants are not specifically mentioned. Fines may be levied against Owners or occupants. If a fine is first levied against an occupant and is not paid timely, the fine may then be levied against the Owner.

7.7     Animals and Pets. No animals, livestock, or poultry of any kind may be raised, bred, kept, or permitted on any Lot, with the exception of dogs, cats, or other usual and common household pets in reasonable number, as determined by the Board. No pets shall be kept, bred or maintained for any commercial purpose.

7.8     Nuisance. It shall be the responsibility of each Owner and occupant to prevent the development of any unclean, unhealthy, unsightly, or unkempt condition on his or her property. No property within the Community shall be used, in whole or in part, for the storage of any property or thing that will cause such Lot to appear to be in any unclean or untidy condition or that will be obnoxious to the eye; nor shall any substance, thing, or condition that will emit four or obnoxious odors or that will cause any noise or other condition that will or might disturb the peace, quite, safety, comfort or serenity of the occupants of surrounding property. No noxious or offensive activity shall be carried on within the Community, nor shall anything be done tending to cause embarrassment, discomfort, annoyance, or nuisance to any Person using any property within the Community. There shall not be maintained any plants or animals or device or thing of any sort whose activities or existence in any way is noxious, dangerous, unsightly, unpleasant, or of a nature as may diminish or destroy the enjoyment of the Community. Without limiting the generality of the foregoing, no speaker, horn, whistle, siren, bell, amplifier or other sound device, except such devices as may be used exclusively for security purposes or as approved by the ARC, shall be located, installed or maintained upon the exterior of any Lot unless required by law.

7.9     Unsightly or Unkempt Conditions. The pursuit of hobbies or other activities, including specifically, without limiting the generality of the foregoing, the assembly and disassembly of motor vehicles and other mechanical devices, which might tend to cause disorderly, unsightly, or unkempt conditions, shall not be pursued or undertaken in any part of the Community.

-12-



(Page 17 of 32)

18816
1988



7.10   Prohibited Conditions. The following conditions, structures, or activities are prohibited within the Community unless prior approval in writing is obtained from ARC by the Owner or occupant:

(a)   Antennas. No exterior antennas of any kind, including, without limitation, satellite dishes;

(b)   Tree Removal. No trees that are more than 4 inches in diameter at a point 2 feet above the ground shall be removed, and no flowering trees, including, without limitation, dogwood trees, regardless of their diameter, shall be removed, except for any trees, regardless of their diameter, that are located within 10 feet of a drainage area, a septic field, a sidewalk, a residence, or a driveway.

(c)   Air-Conditioning Units. No window air-conditioning units shall be installed.

(d)   Lighting. Exterior lighting visible from the street shall not be permitted except for (i) approved lighting as originally installed on a Lot; (ii) 1 decorative post light; (iii) street lights in conformity with an established street lighting program for the Community; (iv) seasonal decorative lights during the usual and customary season; or (v) front house illumination of model homes.

(e)   Artificial Vegetation, Exterior Sculpture and Similar Items. No artificial vegetation shall be permitted on the exterior of any property. Exterior sculpture, fountains, flags, statuary, play equipment (including, without limitation, stationary or movable basketball goals) planters, gardens, window boxes and similar items must be approved by the ARC.

(f)   Energy Conservation Equipment. No solar collector panels or attendant hardware or other energy conservation equipment shall be constructed or installed unless they are an integral and harmonious part of the architectural design of a structure, as determined in the sole discretion of the ARC;

(g)   Swimming Pools. No above ground swimming pool, hot tub, portable spa, or ponds shall be constructed, erected or maintained upon any Lot.

(h)   Clotheslines. No exterior clotheslines of any type shall be permitted on any Lot.

(i)   Exterior Security Devices. No exterior security devices, including, without limitation, window bars or security doors, shall be permitted on any residence or Lot. Signs placed on the Lot or the exterior of the residence stating that such residence is protected by

-13-



a security system shall not be deemed to constitute an exterior security device.

(j)   Utility Lines.  No overhead utility lines, including lines for cable television, shall be permitted within the Community, except for temporary lines as required during construction and lines installed by or at the request of the Declarant.

(k)   Storage Buildings, Barns, Shed and Out Buildings.  No storage buildings, barns, sheds or other out buildings shall be constructed, located or maintained on any Lot.

7.11   Drainage.  Catch basins and drainage areas are for the purpose of natural flow of water only.  No obstructions or debris shall be placed in these area.  No Owner or occupant may obstruct or rechannel the drainage flows after location and installation of drainage swales, storm sewers, or storm drains.  Declarant hereby reserves to the Declarant and the Association a perpetual easement across all Community property for the purpose of altering drainage and water flow.  Rights exercised pursuant to such reserved easement shall be exercised with a minimum of interference to the quiet enjoyment of affected property, reasonable steps shall be taken to protect such property, and damage shall be repaired by the Person causing the damage at its sole expense.

7.12   Sight Distance at Intersections.  All property located at street intersections or driveways shall be landscaped so as to permit safe sight across such areas.  No fence, wall, hedge, or shrub planting shall be placed or permitted to remain where it would create a traffic or sight problem.

7.13   Garbage Cans, Woodpiles, Etc..  All garbage cans, woodpiles, and other similar items shall be located or screened so as to be concealed from view of neighboring streets and property.  All rubbish, trash and garbage shall be regularly removed and shall not be allowed to accumulate.  Declarant, however, hereby expressly reserves the right to dump and bury rocks on property within the Community as needed for efficient construction and to allow developers and builders within the Community to bury rocks removed from a building site.

7.14   Subdivision of Lot.  No Lot shall be subdivided or its boundary lines changed except with the prior written approval of ARC.  Declarant, however, hereby expressly reserves the right to replat any Lot or Lots owned by Declarant.  Any such decision, boundary line change, or replatting shall not be in violation of the applicable subdivision and zoning regulations.

7.15   Guns.  The use of firearms in the Community is prohibited.  The term "firearms" includes without limitation "B-B" guns, pellet guns, and firearms of all types.

7.16   Fences.  No fence or fending type barrier of any kind shall be placed, erected, allowed or maintained upon any Lot without the prior written consent of the ARC.  Under no circumstances shall any fence be placed, erected, allowed or maintained upon any Lot closer to the street than the rear one-third of the residence located on the lot.  Only shadowbox style privacy fencing constructed of six foot maximum height, dog-eared, unpainted, cedar shall be

-14-



(Page 19 of 32)
8898



approved by the ARC. Notwithstanding the foregoing, the Declarant shall have the right to erect fencing of any type, at any location, on any Lot during the period that such Lot is being used by Declarant as a model home. The Board shall have the right to erect fencing of any type considered appropriate or desirable by the Board at any location on the Common Property.

7.17    Mailboxes. All mailboxes located on Lots shall be of a similar style approved by the ARC. Replacement mailboxes may be installed after the type has been approved in writing by the ARC.

7.18    Exteriors. Any change to the exterior color of any improvement located on a Lot, including, without limitation, the dwelling, must be approved by the ARC.

7.19    Entry Features and Boundary Fences. Owners shall not alter, remove or add improvements to any entry features or boundary fence constructed by the Declarant on any Lot, or any part of an Association Landscape Easement without the prior written consent of the ARC or the Board.

7.20    Plat Restrictions. In addition to the Use Restrictions set forth above, this Declaration shall include, and by this reference hereby incorporates as if fully set forth herein, any restrictions set forth on that certain Final Plat for Sawnee View Farms, dated 11/10/94, prepared by Metro Engineering & Survey, Inc., Chester M. Smith RLS No. 1445, recorded in Plat Book 41, Page 276  Forsyth County, Georgia Records.

7.21    Additional Restrictions and Requirements. In addition to the foregoing,

(a)    No Lot shall be subdivided;

(b)    No residence shall be erected on any Lot to have less than 1,800 square feet of indoor heated area;

(c)    No relocated house is to be moved onto any Lot;

(d)    All houses shall have at least a double side or rear entry garage, and no house shall have front entrance garages unless expressly approved by the ARC;

(e)    All structures erected shall be completed within one year from the date that structural work begins;

(f)    The front exterior of all houses shall be of Brick veneer or other masonry product approved by the ARC; and

(g)    All exterior elevations and exterior colors shall be approved by the ARC.

-15-



(Page 20 of 32)
0091

**Article VIII**
**Insurance and Casualty Losses**

8.1   Association Insurance.

(a)   Required Coverages. The Association, acting through its Board or its duly authorized agent, shall obtain and continue in effect the following types of insurance, if deemed necessary by the Board and reasonably available, or if not reasonably available, the most nearly equivalent coverages as are reasonably available;

(i)   Blanket property insurance covering "risks of direct physical loss" on a "special form" basis (or comparable coverage by whatever name denominated) for all insurable improvements on the Common Property and on other portions of the Area of Common Responsibility to the extent that it has assumed responsibility for maintenance, repair and/or replacement in the event of a casualty. If such coverage is not generally available at reasonable cost, then "broad form" coverage may be substituted. The Association shall have the authority to and interest in insuring any property for which it has maintenance or repair responsibility, regardless of ownership. All property insurance policies obtained by the Association shall have policy limits sufficient to cover the full replacement cost of the insured improvements;

(ii)   Commercial general liability insurance on the Area of Common Responsibility, insuring the Association and its Members for damage or injury caused by the negligence of the Association or any of its Members, employees, agents, or contractors while acting on its behalf. If generally available at reasonable cost, the commercial general liability coverage (including primary and any umbrella coverage) shall have a limit of at least $1,000,000.00 per occurrence with respect to bodily injury, personal injury, and property damage;

(iii)   Workers compensation insurance and employers liability insurance, if and to the extent required by law;

(iv)   Directors and officers liability coverage;

(v)   Fidelity insurance covering all Persons responsible for handling Association funds in an amount determined in the Board's best

-16-

*91*

(Page 21 of 32)
00010
0892

business judgement but not less than an amount equal to one-sixth of the annual assessments on all Lots plus reserves on hand. Fidelity insurance policies shall contain a waiver of all defenses based upon the exclusion of Persons serving without compensation; and

(vi)  Such additional insurance as the Board in its best business judgement determines advisable.

The Board is hereby authorized to contract with or otherwise arrange to obtain the insurance coverage required hereunder through the Declarant and to reimburse Declarant for the cost thereof, and Declarant shall be authorized, but not obligated, to purchase such insurance coverage for the benefit of the Association and the Owners upon Declarant and the Association agreeing upon the terms and conditions applicable to reimbursement by the Association for costs incurred by Declarant in obtaining such coverage.  Notwithstanding anything contained in this Declaration to the contrary, the Board shall not be required to comply with the provisions of this Article if the Board has contracted for or otherwise arranged to obtain the required insurance coverage through the Declarant.

(b)  Policy Requirements.  The Association shall periodically cause a review of the sufficiency of insurance coverage by one or more qualified Persons, at least one of whom must be familiar with insurable replacement costs in the metropolitan Atlanta, Georgia area.

All Association policies shall provide for a certificate of insurance to be furnished to each Member insured and to the Association.

The policies may contain a reasonable deductible and the amount thereof shall not be subtracted from the face amount of the policy in determining whether the policy limits satisfy the requirements of Section 8.1(a).  In the event of an insured loss, the deductible shall be treated as a common expense of the Association; provided, if the Board reasonably determines, after notice and an opportunity to be heard in accordance with the By-Laws, that the loss is the result of the negligence or willful misconduct of one or more Owners, their guests, invitees or lessees, then the Board may specifically assess the full amount of such deductible against such Owner(s) and their Lot(s) pursuant to Section 4.4.

All insurance coverage obtained by the Board shall:

(i)  be written with a company authorized to do business in the State of Georgia which satisfies the requirements of the Federal National Mortgage Association, or such other secondary mortgage market agencies or federal agencies as the Board deems appropriate;

-17-



(ii)    be written in the name of the Association as trustee for the benefitted parties. Policies on the Common Property shall be for the benefit of the Association and its Members;

(iii)    not be brought into contribution with insurance purchased by Owners, occupants, or their Mortgagees individually;

(iv)    contain an inflation guard endorsement; and

(v)    include an agreed amount endorsement, if the policy contains a con-insurance;

In addition, the Board shall use reasonable efforts to secure insurance policies which list the Owners as additional insureds and provide:

(i)    a waiver of subrogation as to any claims against the Association's Board, officers, employees, and its manager, the Owners, and their tenants, servants, agents and guests;

(ii)    a waiver of the insurer's rights to repair and reconstruct instead of paying cash;

(iii)    an endorsement precluding cancellation, invalidation, suspension, or non-renewal by the insurer on account of any one or more individual Owners, or on account of any curable defect or violation without prior written demand to the Association to cure the defect or violation and allowance of a reasonable time to cure;

(iv)    an endorsement excluding Owners' individual policies from consideration under any "other insurance" clause;

(v)    an endorsement requiring at least 30 days' prior written notice to the Association of any cancellation, substantial modification, or non-renewal;

(vi)    a cross liability provision; and

(vii)    a provision vesting in the Board exclusive authority to adjust losses; provided, however, no Mortgagee having an interest in such losses may be prohibited from participating in the settlement negotiations, if any, related to the loss.

(c)    **Damage and Destruction.**  Immediately after damage or destruction to all or any part of the Community covered by insurance written in the name of the Association, the Board or its duly authorized agent shall file and adjust all insurance and obtain reliable and detailed estimates of the cost of repair or reconstruction.  Repair or reconstruction, as used in this

-18-



paragraph, means repairing or restoring the property to substantially the condition in which it existed prior to the damage; allowing for changes or improvements necessitated by changes in applicable building codes.

Any damage to or destruction of the Common Property shall be repaired or reconstructed unless at least 75% of the Total Association Vote otherwise agrees not to repair or reconstruct.

If either the insurance proceeds or reliable and detailed estimates of the cost of repair or reconstruction, or both, are not available to the Association within such 60-day period, then the period shall be extended until such funds or information are available. However, such extension shall not exceed 60 additional days. No Mortgagee shall have the right to participate in the determination of whether the damage or destruction to the Common Property shall be repaired or reconstructed.

If determined in the manner described above that the damage or destruction to the Common Property shall not be repaired or reconstructed and no alternative improvements are authorized, the affected property shall be cleared of all debris and ruins and thereafter shall be maintained by the Association in a neat and attractive landscaped condition consistent with the Community-Wide Standard.

Any insurance proceeds remaining after paying the costs of repair or reconstruction, of after such settlement as is necessary and appropriate, shall be retained by and for the benefit of the Association and placed in a capital improvements account. This is a covenant for the benefit of Mortgagees and may be enforced by the Mortgagee of any affected Lot.

If insurance proceeds are insufficient to cover the costs of repair or reconstruction, the Board may, without a vote of the Members, levy a special assessment to cover the shortfall.

8.2    Owners' Insurance.  By virtue of taking title to a Lot, each Owner covenants and agrees with all other Owners and with the Association to carry property insurance for the full replacement cost of all insurable improvements on his or her Lot,less a reasonable deductible. Each Owner further covenants and agrees that in the event of damage to or destruction of structures on or comprising his Lot, the Owner shall proceed promptly to repair or to reconstruct in a manner consistent with the original construction or such other plans and specifications as are in accordance with Article VI. Alternatively, the Owner shall clear the Lot of all debris and ruins and maintain the Lot in a neat and attractive, landscaped condition consistent with the Community-Wide Standard. The Owner shall pay any costs which are not covered by insurance proceeds.

-19-



(Page 24 of 32)

## Article IX
## Annexation of Additional Property

9.1    Unilateral Annexation By Declarant.  Declarant shall have the unilateral right so long as Declarant owns any property subject to this Declaration, but not an obligation, to subject all or any portion of any real property immediately adjacent to the Community to the provisions of this Declaration and the jurisdiction of the Association within five years of recording this Declaration.  Annexation of such property shall be accomplished by recording a Supplemental Declaration in the county land records where the Community is located describing the property being subjected.  Any such annexation shall be effective upon the recording of the Supplemental Declaration unless otherwise provided therein.  The Supplemental Declaration may contain additional covenants, conditions, and restrictions or modify those contained as applicable to such property to reflect the different character of any such annexed real property.

9.2    Other Annexation.  The Association may annex any real property to the provisions of this Declaration with the consent of the Owner of such property and the affirmative vote of the Owners of at least two-thirds (2/3) of the Total Association Vote.

Such annexation shall be accomplished by filing a Supplemental Declaration describing the property being annexed in the county land records.  Any such Supplemental Declaration shall be signed by the President and the Secretary of the Association, and by the Owner of the annexed property, and by the Declarant, so long as Declarant owns any property subject to this Declaration.  Any such annexation shall be effective upon filing unless otherwise provided therein.

## Article X
## Mortgage Provisions

The following provisions are for the benefit of holders of first Mortgages on Lots in the Community.  The provisions of this Article apply to both this Declarant and to the By-Laws, notwithstanding any other provisions contained therein.

10.1    Notices of Action.  An institutional holder, insurer, or guarantor of a first Mortgage, who provides a written request to the Association (such request to state the name and address of such holder, insurer, or guarantor and the Lot number, therefore becoming an "eligible holder"), will be entitled to timely written notice of:

(a)    any condemnation loss or any casualty loss which affects a material portion of the Community or which affects any Lot on which there is a first Mortgage held, insured or guaranteed by such eligible holder;

(b)    any delinquency in the payment of assessments or charges owed by an Owner of a Lot subject to the Mortgage of such eligible holder, where such delinquency has continued for a period of sixty (60) days; provided, however, notwithstanding this provision, any holder of a first Mortgage,

-20-





upon request, is entitled to written notice from the Association of any default in the performance by the Owner of the encumbered Lot of any obligation under the Declaration or By-Laws of the Association which is not cured within sixty (60) days;

(c)   any lapse, cancellation, or material modification of any insurance policy maintained by the Association.

10.2   No Priority.  No provision of this Declaration or the By-Laws gives or shall be construed as giving any Owner or other party priority over any rights of the first Mortgagee of any Lot in the case of distribution to such Owner of insurance proceeds or condemnation awards for losses to or a taking of the Common Property.

10.3   Notice to Association.  Upon request, each Lot Owner shall be obligated to furnish to the Association the name and address of the holder of any Mortgage encumbering such Owner's Lot.

10.4   VA/HUD Approval.  As long as the Declarant has the right to appoint and remove the directors of the Association and so long as the project is approved by the U.S. Department of Housing and Urban Development ("HUD") for insuring or the U.S. Department of Veterans Affairs ("VA") for guaranteeing any Mortgage in the Community, the following actions shall require the prior approval of the VA and/or HUD as applicable:  annexation of additional property to the Community, except for annexation by Declarant in accordance with Section 9.1 pursuant to a plan of annexation previously approved by the VA and/or HUD as applicable; dedication of Common Property to any public entity; mergers and consolidations of the Association; dissolution of the Association; and material amendment of the Declaration, By-Laws or Articles of Incorporation.

10.5   Applicability of Article X.  Nothing contained in this Article shall be construed to reduce the percentage vote that must otherwise be obtained under the Declaration, By-Laws, or Georgia law for any of the acts set out in this Article.

10.6   Amendments by Board.  Should the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, HUD or VA subsequently delete any of their respective requirements which necessitate the provisions of this Article or make any such requirements less stringent, the Board, without approval of the Owners, may cause an amendment to this Article to be recorded to reflect such changes.

### Article XI
### Easements

11.1   Easements for Encroachment and Overhang.  The Declarant hereby reserves to the Association and each Lot Owner reciprocal appurtenant easements for encroachment and overhand as between each Lot and such portion or portions of the Common Property adjacent thereto or as between adjacent Lots due to the unintentional placement or settling or shifting or the improvements constructed, reconstructed, or altered thereon (in accordance with the terms of

-21-



this Declaration) to a distance of not more than 5 feet, as measured from any point on the common boundary between each Lot and the adjacent portion of the Common Property or as between adjacent Lots, as the case may be, along a line perpendicular to such boundary at such point; provided, however, in no event shall an easement for encroachment exist if such encroachment occurred due to willful conduct on the part of an Owner, occupant, or the Association.

11.2  Easements for Utilities. There is hereby reserved to the Declarant and the Association blanket easements upon, across, above and under all property within the Community for access, ingress, egress, installation, repairing, replacing, and maintaining all utilities serving the Community or any portion thereof, including, but not limited to, gas, water, sanitary sewer, telephone and electricity, as well as storm drainage and any other service such as, but not limited to, a master television antenna system, cable television system, or security system which the Declarant or the Association might decide to have installed to serve the Community. It shall be expressly permissible for the Declarant, the Association, or the designee of either, as the case may be, to install, repair, replace, and maintain or to authorize the installation, repairing, replacing, and maintaining of such wires, conduits, cables and other equipment related to the providing of any such utility or service. Should any party furnishing any such utility or service request a specific license or easement by separate recordable document, the Board shall have the right to grant such easement.

11.3  Easement for Entry. In addition to the right of the Board to exercise self-help as provided in Section 12.2, the Board shall have the right, but shall not be obligated, to enter upon any property within the Community for emergency, security, and safety reasons, which right may be exercised by the manager, and all policemen, firemen, ambulance personnel, and similar emergency personnel in the performance of their respective duties. Except in an emergency situation, entry shall only be during reasonable house and after notice to the Owner, and the entering party shall be responsible for any damage caused. This right of entry shall include the right of the Board to enter to cure any condition which may increase the possibility of a fire, slope erosion, or other hazard in the event an Owner or occupant fails or refuses to cure the condition upon request by the Board.

11.4  Easement for Maintenance. Declarant hereby expressly reserves a perpetual easement for the benefit of the Association across such portions of the Community, determined in the sole discretion of the Association, as are necessary to allow for the maintenance required under Article V. Such maintenance shall be performed with a minimum of interference to the quiet enjoyment to Owners' property, reasonable steps shall be taken to protect such property, and damage shall be repaired by the Person causing the damage at its sole expense.

11.5  Easement for Entry Features. There is hereby reserved to the Declarant and the Association an easement for ingress, egress, installation, construction, landscaping and maintenance of entry features, boundary fences, and similar streetscapes for the Community, over and upon each Lot as more fully described on an Association Landscape Easement. The easement and right herein reserved shall include the right to cut, remove and plant trees, shrubbery, flowers and other vegetation around such entry features and fences and the right to grade the land under and around such entry features.

-22-



(Page 27 of 32)



11.6   Construction and Sale Period Easement.  Notwithstanding any provisions contained in this Declaration, the By-Laws, Articles of Incorporation, use restrictions, rules and regulations, design guidelines, and any amendments thereto, so long as Declarant owns any property subject to this Declaration, Declarant reserves an easement across the Community for Declarant and any builder or developer approved by Declarant to maintain and carry on, upon such portion of the Community as Declarant may reasonably deem necessary, such facilities and activities as in the sole opinion of Declarant may be required, convenient, or incidental to Declarant's and such builder's or developer's development, construction, and sales activities related to property described on Exhibit "A" to this Declaration, including, but without limitation:

(a)   the rights of access, ingress, egress for vehicular and pedestrian traffic and construction activities over, under, on or in the Community, including, without limitation, any Lot; the right to tie into any portion of the Community with driveways, parking areas and walkways; the right to tie into any/or otherwise connect and use (without a tap-on or any other fee for so doing), replace, relocate, maintain and repair any device which provides utility or similar services including, without limitation, electrical, telephone, natural gas, water, sewer and drainage lines and facilities constructed or installed in, on, under and/or over the Community; and

(b)   the right to carry on sales and promotional activities in the Community; and the right to construct and operate business offices, signs, constructions trailers, model residences, and sales offices.  Declarant and any such builder or developer may use residences, offices, or other buildings owned or leased by Declarant or such builder or developer as model residences and sales offices and may also use recreational facilities available for use by the Community as a sales office without charge.

Rights exercised pursuant to such reserved easement shall be exercised with a minimum of interference to the quiet enjoyment of affected property, reasonable steps shall be taken to protect such property, and damage shall be repaired by the Person causing the damage at its sole expense.

### Article XII
### General Provisions

12.1   Enforcement.  Each Owner and occupant shall comply strictly with the By-Laws, the rules and regulations, the use restrictions, as they may be lawfully amended or modified from time to time, and with the covenants, conditions, and restrictions set forth in this Declaration and in the deed to such Owner's Lot, if any.  The Board may impose fines or other sanctions, which shall be collected as provided herein for the collection of assessments.  Failure to comply with this Declaration, the By-Laws or the rules and regulations shall be grounds for an action to recover sums due for damages or injunctive relief, or both, maintainable by the Board of Directors, on behalf of the Association, or, in a proper case, by an aggrieved Owner.  Failure by the Association or any Owner to enforce any of the foregoing shall in no event be deemed a waiver of the right to do so thereafter.  The Board shall have the right to record in the

-23-





appropriate land records a notice of violation of the Declaration, By-Laws, rules, regulations, use restrictions, or design guidelines and to assess the cost of recording and removing such notice against the Owner who is responsible (or whose occupants are responsible) for violating the foregoing.

12.2    Self-Help.  In addition to any other remedies provided for herein, the Association or its duly authorized agent shall have the power to enter upon any Lot or any other portion of the Community to abate or remove, using such force as may be reasonably necessary, any structure, thing or condition which violates this Declaration, the By-Laws, the rules and regulations, or the use restrictions.  Unless an emergency situation exists, the Board shall give the violating Lot Owner 10 days' written notice of its intent to exercise self-help.  Notwithstanding the foregoing, vehicles may be towed after reasonable notice.  All costs of self-help, including, without limitation, reasonable attorney's fees actually incurred, shall be assessed against the violating Lot Owner and shall be collected as provided for herein for the collection of assessments.

12.3    Duration.  The covenants and restrictions of this Declaration shall run with and bind the Community, and shall inure to the benefit of and shall be enforceable by the Association or any Owner, their respective legal representatives, heirs, successors, and assigns, perpetually to the extent provided by law; provided, however, so long as, and to the extent that, Georgia law limits the period during which covenants restricting land to certain uses may run, any provisions of this Declaration affected thereby shall run with and bind the land so long as permitted by such law, after which time, any such provision shall be automatically extended for successive periods of 20 years.

12.4    Amendment.  This Declaration may be amended unilaterally at any time and from time to time by Declarant for so long as Declarant owns any property subject to this Declaration (a) if such amendment is necessary to bring any provision hereof into compliance with any applicable governmental statute, rule, or regulation or judicial determination which shall be in conflict therewith; (b) if such amendment is necessary to enable any title insurance company to issue title insurance coverage with respect to the lots subject to this Declaration; (c) if such amendment is required by an institutional or governmental lender or purchaser of mortgage loans, including, for example, the Federal National Mortgage Association or Federal Home Loan Mortgage Corporation, to enable such lender or purchaser to make or purchase Mortgage loans on the Lots subject to this Declaration; or (d) is such amendment is necessary to enable any governmental agency or private insurance company to insure or guarantee Mortgage loans on the lots subject to this Declaration; provided, however, any such amendment shall not adversely affect the title to any Owners' Lot unless any such Lot Owner shall consent thereto in writing.  Further, so long as Declarant owns any property subject to this Declaration as provided in Article IX hereof, Declarant may unilaterally amend this Declaration for any other purpose; provided, however, any such amendment shall not materially adversely affect the substantive rights of any Lot Owners hereunder, nor shall it adversely affect title to any Lot without the consent of the affected Lot Owner.

In addition to the above, this Declaration may be amended upon the affirmative vote of at least two-thirds (2/3) of the Total Association Vote.  Amendment to this Declaration shall become effective upon recordation, unless a later effective date is specified therein.

-24-

12.5   Gender and Grammar.  The singular, wherever used herein, shall be construed to mean the plural, when applicable, and the use of the masculine pronoun shall include the neuter and feminine.

12.6   Severability.  Whenever possible, each provision of this Declaration shall be interpreted in such manner as to be effective and valid, but if the application of any provision of this Declaration to any person or to any property shall be prohibited or held invalid, such prohibition or invalidity shall not affect any other provision or the application of any provision which can be given effect without the invalid provision or application, and, to this end, the provisions of this Declaration are declared to be severable.

12.7   Captions.  The captions of each Article and Section hereof, as to the contents of each Article and Section, are inserted only for convenience and are in no way to be construed as defining, limiting, extending, or otherwise modifying or adding to the particular Article or Section to which they refer.

12.8   Perpetuities.  If any of the covenants, conditions, restrictions, or other provisions of this Declaration shall be unlawful, void, or voidable for violation of the rule against perpetuities, then such provisions shall continue only until twenty-one (21) years after the death of the last survivor of the now living descendants of George Bush, former President of the United States of America.

12.9   Indemnification.  To the fullest extent allowed by applicable Georgia law, the Association shall indemnify every officer and director against any and all expenses, including, without limitation, attorney's fees, imposed upon or reasonably incurred by any officer or director in connection with any action, suit, or other proceeding (including settlement of any suit or proceeding, if approved by the then Board of Directors) to which such officer or director may be party by reason of being or having been an officer or director.  The officers and directors shall not be liable for any mistake or judgement, negligent or otherwise, except for their own individual willful misfeasance, malfeasance, misconduct, or bad faith.  The officers and directors shall have no personal liability with respect to any contract or other commitment made by them, in good faith, on behalf of the Association (except to the extent that such officers or directors may also be members of the Association), and the Association shall indemnify and forever hold each such officer and director free and harmless against any and all liability to others on account of any such contract or commitment.  Any right to indemnification provided for herein shall not be exclusive of any other rights to which any officer or director, or former officer or director, may be entitled.

12.10   Notice of Sale, Lease or Acquisition.  In the event an Owner sells or leases such Owner's Lot, the Owner shall give to the Association, in writing, prior to the effective date of such sale or lease, the name of the purchaser or lessee of the Lot and such other information as the board may reasonably require.  Upon acquisition of a Lot each new Owner shall give the Association, in writing, the name and mailing address of the Owner and such other information as the Board may reasonably require.

12.11   Agreements.  Subject to the prior approval of Declarant (so long as Declarant owns any property subject to this Declaration) all agreements and determinations, including settlement agreements regarding litigation involving the Association, lawfully authorized by the

-25-



Board, shall be binding upon all Owners, their heirs, legal representatives, successors, assigns, and others having an interest in the Community or the privilege of possession and enjoyment of any part of the Community.

12.12  Implied Rights.  The Association may exercise any right or privilege given to it expressly by this Declaration, the By-Laws, the Articles of Incorporation, any use restriction or rule, and every other right or privilege reasonably to be implied from the existence of any right or privilege given to it therein or reasonably necessary to effectuate any such right or privilege.

12.13  Variances.  Notwithstanding anything to the contrary contained herein, the Board or its designee shall be authorized to grant individual variances from any of the provisions of this Declaration, the By-Laws and any rule, regulation or use restriction promulgated pursuant thereto if it determines that waiver of application or enforcement of the provision in a particular case would not be inconsistent with the overall scheme of development for the Community.

12.14  Litigation.  No judicial or administrative proceeding shall be commenced or prosecuted by the Association unless approved by at least two-thirds (2/3) of the Total Association Vote.  This Section shall not apply, however, to (a) actions brought by the Association to enforce the provisions of this Declaration (including, without limitation, the foreclosure of liens), (b) the imposition and collection of assessments as provided in Article IV hereof, (c) proceedings involving challenges to ad valorem taxation, or (d) counterclaims brought by the Association in proceedings instituted against it.  This Section shall not be amended unless such amendment is made by the Declarant pursuant to Section 12.4, or is approved by the percentage votes, and pursuant to the same procedures, necessary to institute proceedings as provided above.

12.15  Inconsistency.  In the event any of the covenants and restrictions contained in this Declaration are inconsistent with the covenants and restrictions contained in any recorded plat of the Community, the covenants and restrictions contained in this Declaration shall control.

12.16  Termination of Rights of Declarant.  The rights, liabilities and obligations of the Declarant created hereunder shall automatically lapse and terminate as of the time and date of the recording of the deed conveying title to the portion of the total number of Lots in the Community now or hereafter owned by Declarant or made a part of this Declaration by a Supplemental Declaration, which results in the Declarant owning no property subject to this Declaration, unless Declarant elects to sooner terminate pursuant to this Paragraph. Notwithstanding the foregoing, Declarant shall have the option to terminate any or all of its rights, obligations and associated liabilities hereunder prior to the sale of all of its property subject to this Declaration by providing to the Board, or any member thereof, a written notice of election to terminate.  The Association shall hold harmless and release Declarant from any claim, loss, liability, damages or causes of action arising on or after the date Declarant's rights, liabilities and obligations expire by virtue of the terms of this Paragraph.

12.17  Appointment of Officers and Directors.  For so long as Declarant owns any property subject to this Declaration or such earlier time as Declarant may elect pursuant to Paragraph 12.16 hereof, Declarant shall have the sole and exclusive right to appoint and dismiss each of the officers and directors of the Association required under the By-Laws.

-26-



101

(Page 31 of 32)

0102

102

IN WITNESS WHEREOF, the Declarant herein hereby executed this instrument under seal by and through its duly authorized officers this __18__ day of ~~October~~, *November* 1994.

Signed, sealed and delivered
this __18__ day of ~~October~~, *November*
1994, in the presence of:

WITNESS

*Samuel Appel*

NOTARY PUBLIC

My Commission Expires: 7-5-97

{AFFIX NOTARY SEAL}

DECLARANT

CONRAD MORTGAGE CORPORATION,
a Georgia Corporation

BY: _____

ITS: *President*

ATTEST: _____

ITS: *Secretary*

[CORPORATE SEAL]

-27-

Book:  816  Page:   72  Sec: 31

(Page 32 of 32)

## EXHIBIT "A"

### (Legal Description)

All that tract or parcel of land lying and being in Land Lots
1023, 1024, 1065 and 1066 of the Third District and First Section
of Forsyth County, Georgia, the same consisting of 48.3628 acres
designated as Sawnee View Farms Subdivision as per plat of Sawnee
View Farms Subdivision prepared by Metro Engineering and Survey
Company, Inc., Chester M. Smith, registered land surveyor no. 1445,
dated the ___ (D day of November, 1994, and recorded at Plat Book
_____, Page _____, Clerk's Office, Forsyth Superior Court, to
which reference is made for  more complete description,

The above described property being the same property described
in that certain survey for Grace Development Corp., dated May 26,
1994, revised November 9, 1994, as prepared by Metro Engineering
Survey Company, Inc., Chester M. Smith, R.L.S. No. 1445, recorded
at Plat Book 41, page 145, aforesaid records.

*103*

(Page 1 of 2)
8699

Clerk, please cross-reference to Declaration
recorded at Book 816, Page 77-103

AMENDMENT TO DECLARATION OF PROTECTIVE COVENANTS
OF SAWNEE VIEW FARMS

COMES NOW Conrad Mortgage Corporation, a declarant under that certain Declaration of Protective Covenants of Sawnee View Farms Subdivision recorded at Book 816, Page 77-103, Georgia Records, and pursuant to a special meeting of the Sawnee View Farms Homeowners Association conducted on the 17th day of July, 1997 hereby amends the Declaration as follows:

Article 7.16 is hereby deleted in its entirety and is hereby restated as follows:

7.16   "Fences. No fence or fending type barrier of any kind shall be placed, erected, allowed or maintained upon any Lot without the prior written consent of the ARC. Under no circumstances shall any fence be placed, erected, allowed or maintained upon any Lot closer to the street than the rear one-third of the residence located on the lot. Subject to approval in quality construction and materials by the ARC in the ARC's sole reasonable discretion, shadowbox style privacy fencing constructed of six foot maximum height, dog-eared, unpainted, cedar and the other styles described in "Schedule A - Fence Styles" attached hereto shall be approved by the ARC, provided, however, that the ARC shall have the discretion to approve other fence styles so long as the same meet the above-described criteria for quality in construction, materials and design and are in sympathy with the overall designs utilized in Sawnee View Farms. Notwithstanding the foregoing, the Declarant shall have the right to erect fencing of any type, at any location, on any Lot during the period that such Lot is being used by Declarant as a model home. The Board shall have the right to erect fencing of any type considered appropriate or desirable by the Board at any location on the Common Property."

WITNESS the hand and seal of the undersigned this 6ᵗʰ day of October, 1997.

Forsyth County Georgia
Clerks Office Superior Court
Filed for record on the 24
day of Oct 19 97
at 2:05 o'clock P M. Recorded in
Book 1184 Page 699 - 700
day of 10 - 28 - 1997
Douglas Daniels, Clerk, By ___
Pd $ Int Carol A Crowley

DECLARANT
Conrad Mortgage Corporation

By: _____
    V.H. Rowland, III, Its President
    [Corporate Seal]

ATTEST:
Signed, sealed and delivered this 6ᵗʰ day
of October, 1997, in the presence of:

_____
Witness

_____
NOTARY PUBLIC   Notary Public DeKalb County, Georgia
My commission expires: My Commission Expires December 18, 199 ___

(Page 2 of 2)

1184
00



## Schedule "A"

1.  Wrought Iron

2.  Cedar with 1 inch spacing

3.  Solid cedar dog ear

4.  Solid cedar – scalloped (inverted)

5.  Solid cedar – scalloped

6.  Spaced French Gothic

(Page 1 of 2)
00259

Return to: Michael R. Sleister
112 North Main Street
~~~~~~g, GA 30040

Reference to Declaration of Protective
Covenants for Sawnee View Farms recorded
at Book 816, pages 72-103, Forsyth
County Real Estate Records

Book 2459
Pages 259 - 260
FORSYTH COUNTY, GA - DOCUMENT STAMP
Recorded 10/07/2002    01:10:05 PM
No. 9999-00112914    1 of    2 Pgs
Fee Amt:    12.00
Douglas Sorrells, SUPERIOR COURT CLERK

**AGREEMENT**

This Agreement is entered into this 18 day of August , 2002, by and

between CONRAD MORTGAGE CORPORATION (hereinafter known as "Conrad") and

SAWNEE VIEW FARMS HOMEOWNERS ASSOCIATION, INC. (hereinafter known as

'HOA"), as follows:

1. Conrad, pursuant to paragraph 12.16 of the recorded Declaration of

Protective Covenants for Sawnee View Farms (hereinafter known as "Covenants"), hereby

elects to terminate and transfer to HOA all the rights, liabilities, and obligations of the

declarant. Conrad makes this transfer while still owning property subject to the Covenants,

and HOA accepts this transfer with knowledge of Conrad's ownership of such property.

2. Notwithstanding any language contained in this Agreement to the

contrary, and given that Conrad still owns property in Sawnee View Farms, Conrad is, as

an owner, still obligated to comply with any and all of the rules and regulations as found

in the Bylaws of the Sawnee View Farms Homeowners Association, Inc., and the

Covenants. Furthermore, and notwithstanding that Conrad still owns property in Sawnee

View Farms, Conrad gives up any and all rights pursuant to paragraph 9.1 of the

Covenants that it may have to annex adjacent property onto Sawnee View Farms.

3. Conrad further agrees to pay to HOA the sum of Twenty-Three

Thousand Forty-Four & No/100 Dollars ($23,044.00) in exchange for HOA hereby

releasing Conrad from any and all obligations to make any further repairs or improvements

to the streets in Sawnee View Farms. Conrad's obligation to pay HOA $23,044.00 is

conditioned upon the consent by the governing authority of Forsyth County to the release

of any and all bonds maintained by Conrad as security for any of its obligations to maintain

or improve the streets in Sawnee View Farms. Said $23,044.00 shall be paid by Conrad

to HOA no later than 30 days after such consent is given by the governing authority of

Forsyth County.

4. Conrad and HOA agree to do all things and sign any and all

documents which are necessary to effect the intent of this Agreement. Furthermore,

Conrad agrees to sign any and all deeds necessary for transferring ownership of the

(Page 2 of 2)
00260

common property (as defined in the Covenants) to HOA, and Conrad agrees to turn over

to HOA any and all corporate documents, including, but not limited to, the corporate minute

book, corporate seal, and other Sawnee View Farms Homeowners Association, Inc.

corporate papers.

Read, Understood and Agreed.   The undersigned officer(s) of Conrad
Mortgage Corp., in executing this document, hereby represent that they are duly authorized
to act on behalf of and bind Conrad Mortgage Corp. to the terms and conditions of this
Agreement, this 13th day of September, 2002.

CONRAD MORTGAGE CORP.

By: _____
J. F. ROWLAND, III, President

[Corporate Seal]

Read, Understood and Agreed.  The undersigned officer(s) of Sawnee View
Farms Homeowners Association, Inc., in executing this document, hereby represent that
they are duly authorized to act on behalf of and bind Sawnee View Farms Homeowners
Association, Inc. to the terms and conditions of this Agreement, this 19 day of
August, 2002.

SAWNEE VIEW FARMS HOMEOWNERS
ASSOCIATION, INC.

By: _____
JERRY NIX, President

[Corporate Seal]

2

(Page 1 of 2)
00404

RECORD AND RETURN TO:
Michael R. Sleister
Lipscomb, Johnson, Sleister,
 Dailey & Smith, LLP
112 North Main Street
Cumming, Georgia 30040

*Ray Hill*
*Lot 3of5 Squirrel Lake Lane*
*Cumming GA 30040*

```
Book    2551
Pages   404  -  405
FORSYTH COUNTY, GA - DOCUMENT STAMP
Recorded 12/09/2002    12:38:47 Pm
No. 9999-00126088    1 of    2 Pgs
Fee Amt:             12.00
Douglas Sorrells, SUPERIOR COURT CLERK
```

STATE OF GEORGIA
COUNTY OF FORSYTH

### WARRANTY DEED

THIS INDENTURE made this 2 day of ~~December~~ in the year of our Lord Two

Thousand Two, between **Conrad Mortgage Corporation**, of the State of Georgia and

County of Forsyth, hereinafter called Grantor, and **Sawnee View Farm Homeowners**

**Association, Inc.**, of the State of Georgia and County of Forsyth, hereinafter called Grant-

ee, the words "Grantor" and "Grantee" to include their respective heirs, successors and

assigns where the context requires or permits.

### W I T N E S S E T H :

That Grantor, for and in consideration of the sum of TEN DOLLARS ($10.00) and

other good and valuable consideration, in hand paid at and before the sealing and delivery

of these presents, the receipt whereof is hereby acknowledged, has granted, bargained,

sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell,

alien, convey and confirm unto the said Grantee, the real property described as follows:

### TRACT I

All that tract or parcel of land located in the 3rd District, 1st Section of
Forsyth County, Georgia, known as the Amenities Area in Sawnee View
Farms Subdivision and as more particularly described in the final plat of

(Page 2 of 2)
00405

Sawnee View Farms Subdivision by Chester W. Smith, Jr., and recorded in Plat Book 41, pages 276 through 278, of Forsyth County real estate records.

**TRACT II**

All that tract or parcel of land located in the 3rd District, 1st Section of Forsyth County, Georgia, known as Lot 42 in Sawnee View Farms Subdivision and as more particularly described in the final plat of Sawnee View Farms Subdivision by Chester W. Smith, Jr., and recorded in Plat Book 41, pages 276 through 278, of Forsyth County real estate records.

This conveyance and the warranty of title contained herein are made subject to the following:

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereto, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in FEE SIMPLE.

AND THE SAID Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons whomsoever, except as set forth above.

IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year above written.

Signed, sealed and delivered in the presence of:

CONRAD MORTGAGE CORPORATION

Title: President

[Corporate Seal]

Unofficial Witness

Notary Public

(Seal)

My commission expires:
Notary Public, Cobb County, Georgia
My Commission Expires June 19, 2004.

Book: 2551 Page: 404 Seq: 2

(Page 1 of 2)
00555

# SAWNEE VIEW FARMS HOA

P.O. BOX 1202         Cumming, GA 30028

### AMENDMENT TO DECLARATION OF PROTECTIVE COVENANTS
### OF SAWNEE VIES FARMS

The following lots have all voted yea in favor of the previously mentioned Article IV, Section 4.7 deletion and restatement with all signatures being on file with the Declarant and made a part of this document by reference:

Lots:
1,2,3,4,6,8,11,15,16,17,18,19,20,21,22,23,27,28,29,30,31,32,36,37,38,39,41,42,43,44,45,
46,47,48,49,50,51,52,53,54,55,56,57,58,60,62,63,64,65,66,67,68

WITNESS the hand of the undersigned this _25th_ day of _February_ 2003.

DECLARANT
Sawnee View Farms HOA

BY: _____
Jerry Nix , HOA President

ATTEST:
Signed, sealed and delivered this _25th_ day
of _February_ , 2003 in the presence of

_____
(witness)

NOTARY PUBLIC
My Commission exp____

```
Book   2658
Pages  555 - 556
FORSYTH COUNTY, GA - DOCUMENT STAMP
Recorded 02/26/2003   12:29:02 Pm
No. 9999-00143543   1 of   2 Pgs
Fee Amt:        12.00
Douglas Sorrells, SUPERIOR COURT CLERK
```

Ret Ray Hill
3015 Sawnee Lake Lane
Cumming GA   30040

(Page 2 of 2)
00556

# SAWNEE VIEW FARMS HOA

P.O. BOX 1202          Cumming, GA 30028

### AMENDMENT TO DECLARATION OF PROTECTIVE COVENANTS
### OF SAWNEE VIES FARMS

COMES NOW Sawnee View Farms HOA, the Declarant under that certain Declaration
of Protective Covenants of Sawnee View Farms Subdivision recorded at Book 2459,
Pages 259–260, as recorded in Forsyth County on 7 October 2002, and pursuant to a
special meeting of the Sawnee View Farms Homeowners Association conducted on
Wednesday 22 January 2003, and followed up by a special ballot distribution on 12
February 2003 to all Sawnee View Farms Homeowners Association Lot owners, hereby
amends the Declaration as follows:

Article IV, Section 4.7 is hereby deleted in its entirety and is hereby restated as follows:

Section 4.7 Date of Commencement of Assessments
The assessments shall commence on each Lot (exclusive of Lot 42) on the first business
day of the Association's fiscal year, unless provided otherwise by the Board of Directors.
The first annual assessment shall be adjusted according to the number of months then
remaining in that fiscal year. Subsequent assessments shall be due and payable on the
first business day of the Association's fiscal year, unless provided otherwise by the Board
of Directors.

WITNESS the hand of the undersigned this 25th day of February 2003.

DECLARANT
Sawnee View Farms HOA

BY: _____
Jerry Nix , HOA President

ATTEST:
Signed, sealed and delivered this 25th day

of February , 2003 in the presence of

_____
(witness)

_____
NOTARY PUBLIC
My Commission Expires:

ANGELA M. HILL
NOTARY
GEORGIA
SEP 16 200_
PUBLIC
...TH COUNTY

1

(Page 1 of 4)

Ray Hill
3015 Sawnee Lake Lane
Cumming GA 30040

Doc ID: 000016390004 Type: GLR
Recorded: 03/31/2003 at 10:02:08 AM
Fee Amt: $16.00 Page 1 of 4
Forsyth, GA
Douglas Sorrells Clerk Superior Ct
BK 2706 PG 557-560

# SAWNEE VIEW FARMS HOA

**P.O. BOX 1202          Cumming, GA 30028**

### AMENDMENT TO DECLARATION OF PROTECTIVE COVENANTS
### OF SAWNEE VIES FARMS

COMES NOW Sawnee View Farms HOA, the Declarant under that certain Declaration of Protective Covenants of Sawnee View Farms Subdivision recorded at Book 2459, Pages 259–260, as recorded in Forsyth County on 7 October 2002, and pursuant to special meetings of the Sawnee View Farms Homeowners Association conducted on (1) 22 January 2003, and followed up by a special ballot distribution on 12 February 2003 (2) Wednesday 26 February 2003, and followed up by a special ballot distribution on 27 February 2003, to all Sawnee View Farms Homeowners Association Lot owners, hereby amends the Declaration as follows:

Declaration of Protective Covenants for Sawnee View Farms Subdivision as recorded at Book 816 Pages 72 – 103 and as recorded at book 2658 Pages 555,556.

**Article IV, Section 4.1 is hereby deleted in its entirety and is hereby restated as follows:**

Section 4.1 _Assessment Obligations._ Assessments shall be used for promoting the health, safety welfare, common benefit, and enjoyment of the Owners and the maintenance of the Area of Common Responsibility. Each Owner of any Lot, by acceptance of a deed therefore, whether or not it shall be so expressed in such deed, covenants and agrees to pay to the Association; (a) annual assessments; (b) special assessments; and (c) specific assessments which include, without limitation, fines as may be imposed in accordance with the terms of this Declaration. All such assessments, together with late charges, interest, not to exceed 18% per annum on the principal amount due, costs, and reasonable attorney's fees actually incurred, shall be a charge on the land and shall be a continuing lien upon the Lot against which each assessment is made. Each such assessment, together with late charges, interest, costs, and reasonable attorney's fees actually incurred, shall also be the personal obligation of the person who was the Owner of such Lot at the time the assessment fee became due. Each Owner shall be personally liable for the portion of each assessment coming due while the Owner of a Lot, and each grantee of any Owner shall be jointly and severally liable for such portion thereof as may be due and payable at the time of conveyance; provided, however, the liability of a grantee for the unpaid assessments of its grantor shall not apply to any first Mortgagee taking title through foreclosure proceedings or deed in lieu of foreclosure.

The Association shall, within five days after receiving a written request therefore and for a reasonable charge, furnish a certificate signed by an officer of the Association setting forth whether the assessments on a specified Lot have been paid. A property executed certificate of the Association as to the status assessments on a Lot shall be binding upon the Association as of the date of issuance.

Annual assessments shall be levied on all Lots and shall be paid in such manner and on such dates as may be fixed by the board. The Association may, upon 10 days written notice, accelerate the annual assessments for delinquents. Unless otherwise provided by the Board, the assessment shall be paid in annual installments.

**Article IV, Section 4.2 is hereby deleted in its entirety and is hereby restated as follows:**

The Board shall prepare a budget, based upon each Lot owner being charged $350/year (plus a negotiated price with a single garbage vendor for garbage pick-up service for Lots with a house build on them). This total amount will cover the estimated costs of operating the Association for the coming year. The Board shall cause the budget to be levied equally against each Lot (with the exception of those owner(s) of Lot(s) that have no house currently built upon them. In such case that owner will be charged a flat $350/year/Lot). The Board shall deliver to each member a copy of the budget and a notice of assessment for the following year at least 30 days prior to the end of the fiscal year. The budget and the assessment shall become effective unless disapproved at a meeting by the majority of Total Association Vote. If the membership disapproves the proposed budget or the Board fails for any reason so to determine the budget for the succeeding year, then and until such time as a budget shall have been determined, as provided herein, the budget in effect for the then current year shall continue for the succeeding year.

**Article IV, Section 4.7 is hereby deleted in its entirety and is hereby restated as follows:**

Section 4.7 Date of Commencement of Assessments
The assessments shall commence on each Lot (exclusive of Lot 42) on the first business day of the Association's fiscal year, unless provided otherwise by the Board of Directors. The first annual assessment shall be adjusted according to the number of months then remaining in that fiscal year. Subsequent assessments shall be due and payable on the first business day of the Association's fiscal year, unless provided otherwise by the Board of Directors.

WITNESS the hand of the undersigned this 21$^{st}$ day of March 2003.

                              DECLARANT
                              Sawnee View Farms HOA

(Page 3 of 4)

BY: _____
Jerry Nix  HOA President

ATTEST:
Signed, sealed and delivered this _21st_ day

of _March_, 2003 in the presence of

_____
(witness)

_____
NOTARY PUBLIC
My Commission expires: _____

# SAWNEE VIEW FARMS HOA

**P.O. BOX 1202          Cumming, GA  30028**

**AMENDMENT TO DECLARATION OF PROTECTIVE COVENANTS
OF SAWNEE VIES FARMS**

The following lots have voted as indicated below as to the previously mentioned Article IV, Section 4.1, Section 4.2 deletion and restatement with all signatures being on file with the Declarant and made a part of this document by reference:

Lots voting yea:
1,2,3,4,7,8,10,11,12,13,15,16,17,18,20,21,22,23,24,25,26,27,28,29,30,31,32,33,34,36,38, 42,43,44,45,46,47,48,49,50,51,52,53,54,55,56,57,58,60,61,62,63,64,65,66,67,68

Lots voting nay:
9,37,45

The following lots have all voted yea in favor of the previously mentioned Article IV, Section 4.7 deletion and restatement with all signatures being on file with the Declarant and made a part of this document by reference:

Lots:
1,2,3,4,6,8,11,15,16,17,18,19,20,21,22,23,27,28,29,30,31,32,36,37,38,39,41,42,43,44,45, 46,47,48,49,50,51,52,53,54,55,56,57,58,60,62,63,64,65,66,67,68

WITNESS the hand of the undersigned this 21ˢᵗ day of March 2003.

DECLARANT
Sawnee View Farms HOA

BY: _____
Jerry Nix , HOA President

ATTEST:
Signed, sealed and delivered this 21ˢᵗ day
of March , 2003 in the presence of

_____
(witness)

NOTARY PUBLIC
My Commission expires

(Page 1 of 3)

Ray Hill
3515 Sawnee Lake lane
Cumming GA 30040



# SAWNEE VIEW FARMS HOA

**P.O. BOX 1202      Cumming, GA 30028**

AMENDMENT TO DECLARATION OF PROTECTIVE COVENANTS
OF SAWNEE VIES FARMS

COMES NOW Sawnee View Farms HOA, the Declarant under that certain Declaration of
Protective Covenants of Sawnee View Farms Subdivision recorded at Book 2459, Pages 259–
260, as recorded in Forsyth County on 7 October 2002. These changes are made by a special
ballot distribution during 4th quarter of 2003 and 1st quarter of 2004 to all Sawnee View Farms
Homeowners Association Lot owners, hereby amends the Declaration as follows:

Declaration of Protective Covenants for Sawnee View Farms Subdivision as recorded at Book
816 Pages 72 – 103 and as recorded at book 2658 Pages 555,556.

The required two-thirds of all lots have voted yea in favor of the following modifications with
signatures being on file with the Declarant and made a part of this document by reference:

Doc ID: 001395260003 Type: QLR
Filed: 11/18/2004 at 11:58:36 AM
Fee Amt: $14.00 Page 1 of 3
Forsyth, GA
Douglas Sorrells Clerk Superior Ct
BK**3575** PG**1-3**

Article VI
Architectural Standards

1) Section 6.1 General:
   a. (first paragraph, first sentence) strike '*and planting or removal of landscaping
      materials*'

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Article VII
Use Restrictions and Rules

2) Section 7.4 Vehicles
   a. (first paragraph, 4th sentence) change to: '*Garage doors should generally be kept
      closed when not in use throughout the day*'

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Article VII
Use Restrictions and Rules

3) Section 7.10 Prohibited Conditions
   a. (a) Antennas. change to: '*No exterior antennas of any kind, including, without
      limitation, satellite dishes exceeding 20" in diameter*'

   b. (b) Tree Removal. Change to: '*No living trees...*'
   c. keep in its entirety
   d. (d) Lighting. Delete: '*(v) front house illumination of model homes*'

Page 1 of 3

(Page 2 of 3)

e. (e) Artificial Vegetation, Exterior Sculptor and Similar Items. Change first sentence to: '*Exterior sculptor, fountains, flags, statuary, play equipment, planters, gardens window boxes, artificial vegetation and similar items must be approved by the ARC.*'
f. Keep in its entirety
g. (g) Swimming Pools. Change heading to: '*Swimming Pools and Hot Tubs*'. Change first sentence to: '*No above ground swimming pool or portable spa shall be constructed, erected or maintained upon any lot. Plans for installation of hot tubs and ponds must be presented to ARC for approval*'
h. Keep in its entirety
i. Keep in its entirety
j. Keep in its entirety
k. (k) Storage Buildings, Barns, shed and Out Buildings. Change to: '*No barns, sheds or other out buildings shall be constructed, located or maintained on the Lot. Storage Buildings may be constructed upon approval of the ARC. The construction and design must be of similar design and appearance of the house. No prefab Storage Building made of metal, plastic or fiberglass materials will be allowed. Storage Buildings must be free standing and be located in the back of the Lot (no side location).*'

l. **new sub-section - add:** (l) Exterior Door and Window treatments. '*Front porch awnings may only be considered for installation over front doors of homes where no overhanging roofline exist to protect the front entrance door. All requests for awnings must first be approved for design and appearance by the ARC prior to installation. The actual awning material must be of a canvas fabric (no aluminum or fiberglass) content that is to be constructed over a metal or aluminum frame. No retractable awning will be allowed. Fading or rips in the awning fabric will necessitate the immediate replacement of the canvas fabric.*

*Side and/or back door awnings may be considered for installation on any home. All requests for awnings must first be approved for design and appearance by the ARC prior to installation. The actual awning material must be of a canvas fabric (no aluminum or fiberglass) content that is to be constructed over a metal or aluminum frame. No retractable awning will be allowed. Fading or rips in the awning fabric will necessitate the immediate replacement of the canvas fabric.*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### Article VII
### Use Restrictions and Rules

4) Section 7.15 Guns.
  a. Change to: '*The use of firearms in the Community is prohibited. The term 'firearms' includes without limitation "B-B guns, pellet guns, paint ball guns and firearms of all types.*'

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### Article VII
### Use Restrictions and Rules

5) Section 7.16 Fences.
  (An amendment was filed to this section on 6 October 1997 allowing wrought Iron, cedar with 1 inch spacing, dog ear, scalloped (inverted), scalloped or spaced French gothic.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

(Page 3 of 3)

Article VII
Use Restrictions and Rules

6) Section 7.21 Additions and Requirements.
   a. Keep in its entirety
   b. Keep in its entirety
   c. Keep in its entirety
   d. Keep in its entirety
   e. Keep in its entirety
   f. (f) change to: '*The front exterior of all houses shall be of Brick veneer, stucco or other masonry product approved by the ARC: and...*'

WITNESS the hand of the undersigned this 8th day of November 2004.

DECLARANT
Sawnee View Farms HOA

BY: _____
Jerry Nix, HOA President

ATTEST:
Signed, sealed and delivered this 8th day

of November 2004 in the presence of

_____
(witness)

_____
NOTARY PUBLIC
My Commission expires: _____

Page 3 of 3

# Sawnee View Farms Homeowners Association Inc.

*yet* P.O. Box 1202  Cumming, GA 30028

### AMENDMENT TO DECLARATION OF PROTECTIVE COVENANTS OF
### SAWNEE VIEW FARMS HOMEOWNERS ASSOCIATION INC.

COMES NOW Sawnee View Farms Homeowners Association Inc., the Declarant under that certain Declaration of Protective Covenants of Sawnee View Farms Subdivision recorded at Book 2459, Pages 259-260, as recorded in Forsyth County on October 07, 2002, and pursuant to a general membership meeting of the Sawnee View Farms Homeowners Association Inc. conducted on November 16, 2008 followed by a special ballot distribution on November 21, 2008 to all members of the Sawnee View Farms Homeowners Association Inc. lot owners, hereby amends the Declaration to wit:

Article IV, Section 4.2 Amended March 21, 2003 and as recorded on March 31, 2003 in Forsyth County, Georgia, Clerk of Superior Court, Book 2706 pages 557-560 is deleted in its entirety and is hereby restated as follows:

The Board shall prepare a budget covering the estimated costs of operating the Association for the coming year. The Board shall cause the budget to be levied equally against each Lot. The Board shall deliver to each member a copy of the budget and a notice of assessment for the following year at least 30 days prior to the end of the current fiscal year. The budget and the assessment shall become effective unless disapproved at a meeting by the majority of the Total Association Vote. If the membership disapproves the proposed budget or the Board fails for any reason so to determine the budget for the succeeding year, then and until such time as a budget shall have been determined, as provided herein, the budget in effect for the then current year shall continue for the succeeding year.

WITNESS the hand of the undersigned this ___ day of ___ 2009

DECLARANT Sawnee View Farms Homeowners Association Inc.

By:_____
Terry McKendree, President

Doc ID: 010866400002 Type: GLR
Filed: 01/16/2009 at 11:30:30 AM
Fee Amt: $18.00 Page 1 of 2
Forsyth County, GA
Greg G. Allen Clerk Superior Ct
BK5301 PG117-118

(Page 2 of 2)

# Sawnee View Farms Homeowners Association Inc.
## P.O. Box 1202, Cumming, GA 30028

The following lots have voted as indicated below as to the previously
mentioned Article IV, Section 4.2 deletion and restatement with all
signatures being on file with the Declarant and made a part of this document
by reference:

46-YES (Lots:
1,3,4,5,8,11,15,17,18,19,20,21,22,23,24,25,26,27,28,29,30,32,38,39,40,
43,44,45,46,47,48,50,51,52,53,54,55,56,58,59,60,62,63,64,65,68

7-NO Lots: 7,9,12,13,14,33,34

14-No reply Lots: 2,6,10,16,31,35,36,37,41,49,57,61,66,67

DECLARANT  Sawnee View Farms Homeowners Association Inc.

By: _____

Terry McKendree, President













Return To:
Boling, Rice, McGruder, Barron & Beaudin, LLC
Attn: Paul J. McGruder
207 Pirkle Ferry Road
Cumming, Georgia 30040
PJM/51,863-1

Doc ID: 001381800009 Type: QLR
Filed: 08/26/2004 at 03:40:27 PM
Fee Amt: $28.00 Page 1 of 9
Intangible Tax: $0.00
Forsyth, GA
Douglas Sorrells Clerk Superior Ct
BK3473 PG662-670

STATE OF GEORGIA
COUNTY OF FORSYTH

## DEED TO SECURE DEBT

This Indenture, made this 19th day of August, 2004, between **HIGHWAY 279 DEVELOPMENT, LLC, a Georgia limited liability company, and CONRAD MORTGAGE CORPORATION, a Georgia corporation** (collectively, "Grantor"), and **REGIONS BANK**, having as its address 8681 Highway 92, Woodstock, Georgia 30189 ("Grantee").

WITNESSETH: That, Whereas, Grantor is justly indebted to Grantee in the sum of **Three Hundred Fifty Thousand and No/100ths Dollars ($350,000.00)**, in lawful money of the United States, and has agreed to pay the same, with interest thereon, according to the terms of a certain real estate note or promissory note (the "Note") given by Grantor to Grantee, bearing even date herewith, with final payment being due on **January 23, 2005**, the Note, by reference, being made a part hereof:

NOW, THEREFORE, in consideration of the premises and of the sum hereinabove set forth, Grantor has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto Grantee the following property, to-wit:

**All that tract or parcel of land lying and being in Land Lots 1023, 1024, 1065, and 1066 of the 3rd District, 1st Section of Forsyth County, Georgia, and being Lots 7, 12, 13, 33, and 34 of Sawnee View Farms Subdivision, as per plat of said subdivision recorded at Plat Book 41, pages 276-278, Forsyth County Records, which plat and record thereof are incorporated herein by reference fore a more complete description of the Property.**

## SEE HYPOTHECATION AGREEMENT ATTACHED HERETO AS *EXHIBIT A* AND INCORPORATED HEREIN BY REFERENCE THERETO.

TOGETHER, with all buildings, structures and other improvements now or hereafter located on the property hereinbefore described, or any part and parcel thereof; and

TOGETHER, with all rights, title and interest of Grantor in and to the minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter on said property or under or above the same or any part or parcel thereof; and

TOGETHER, with all and singular the tenements, hereditaments, easements and appurtenances thereunto belonging or in any wise appertaining, and the reversion or reversions, remainder and remainders, rents, issues and profits hereof; and also all the estate, right, title, interest claim and demand whatsoever of Grantor of, in and to the same and of, in and to every

part and parcel thereof; and TOGETHER, with all machinery, apparatus, equipment, fittings, fixtures, whether actually or constructively attached to said property and including all trade, domestic and ornamental fixtures, and articles of personal property of every kind and nature whatsoever (hereinafter collectively called "Equipment"), now or hereafter located in, upon or under said property or any part thereof and used or useable in connection with any present or future operation of said property and now owned or hereafter acquired by Grantor, including, but without limiting the generality of the foregoing, all heating, air-conditioning, freezing, lighting, laundry, incinerating and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating and communications apparatus, boilers, ranges, furnaces, oil burners or units thereof; appliances; air-cooling and air-conditioning apparatus; vacuum cleaning systems; elevators, escalators; shades; awnings; screens; storm doors and windows; stoves; wall beds, refrigerators, attached cabinets; partitions; ducts and compressors; rugs and carpets; draperies; furniture and furnishings in commercial, institutional and industrial buildings, together with all additions thereto and replacements thereof (Grantor hereby agreeing with respect to all additions and replacements to execute and deliver from time to time such further instruments as may be requested by Grantee to confirm the conveyance, transfer and assignment of any of the foregoing); and

TOGETHER, with any and all rents which are now due or may hereafter become due by reason of the renting, leasing and bailment of property improvements thereon and Equipment; and

TOGETHER, with any and all awards or payments, including interest thereon, and the right to receive the same, as a result of (a) the exercise of the right of eminent domain, (b) the alteration of the grade of any street, or (c) any other injury to, taking of, or decrease in the value of, the premises, to the extent of all amounts which may be secured by this deed at the date of receipt of any such award or payment by Grantee and of the reasonable attorney's fees, costs and disbursements incurred by Grantee in collection of such award or payment

TO HAVE AND TO HOLD the said premises hereby granted (all of which are collectively referred to herein as the "Premises") to the use, benefit and behoof of the Grantee, forever, in FEE SIMPLE.

Grantor warrants that Grantor has good title to the Premises, and is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey same; that the Premises are unencumbered except as may be herein expressly provided, and that Grantor will forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

This instrument is a deed and security agreement passing the legal title pursuant to the laws of the State of Georgia governing loan or security deeds and security agreements and is not a mortgage; and is made and intended to secure the payment of the indebtedness of Grantor to Grantee evidenced by the Note in accordance with the terms thereof; together with any and all other indebtedness now owing or which may hereafter be owing by Grantor to Grantee, however incurred, and all renewal or renewals and extension or extensions of the Note or other indebtedness, either in whole or in part (all of which are collectively referred to herein as the "Secured Indebtedness").

AND GRANTOR FURTHER COVENANTS AND AGREES WITH GRANTEE as follows:

1.     Grantor shall pay to Grantee the Secured Indebtedness with interest thereon as in the Note and this deed provided.

2.     Grantor shall pay, when due and payable, (a) all taxes, assessments, general or special, and other charges levied on, or assessed, placed or made against the Premises, this instrument or the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby; (b) premiums on policies of fire and other hazard insurance covering the Premises, as required in Article 3 herein; (c) premiums on all collaterally pledged life insurance policies, if any; (d) premiums for mortgage insurance, if this deed and the Note are so insured; and (e) ground rents or other lease rentals, if any, payable by Grantor. Grantor shall promptly deliver to Grantee receipts showing payment in full of all of the above items. Upon notification from Grantee, Grantor shall pay to Grantee, together with and in addition to the payments of principal and interest payable under the terms of the Note secured hereby, on the installment-paying dates of the Note, until said Note is fully paid or until notification from Grantee to the contrary, an amount reasonably sufficient (as estimated by Grantee) to provide Grantee with funds to pay said taxes, assessments, insurance premiums, rents and other charges next due so that Grantee will have sufficient funds on hand to pay same thirty (30) days before the date on which they become past due. In no event shall Grantee be liable for any interest on any amount paid to it as herein required, and the money so received may be

held and commingled with its own funds, pending payment or application thereof as herein provided. Grantor shall furnish to Grantee, at least thirty (30) days before the date on which the same will become past due, an official statement of the amount of said taxes, assessments, insurance premiums and rents next due, and Grantee shall pay said charges to the amount of the then unused credit therefore as and when they become severally due and payable. An official receipt therefore shall be conclusive evidence of such payment and of the validity of such charges. Grantee may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefore in excess of the then amount of credit for said charges. The excess amount advanced shall be immediately due and payable to Grantee and shall become part of the Secured Indebtedness and bear interest at the rate of    % per annum from date of advancement. Grantee may apply credits held by it for the above charges, or any part thereof, on account of any delinquent installments of principal or interest or any other payments maturing or due under this instrument, and the amount of credit existing at any time shall be reduced by the amount thereof paid or applied as herein provided. The amount of the existing credit hereunder at the time of any transfer of the Premises shall, without assignment thereof, inure to the benefit of the successor-owner of the Premises and shall be applied under and subject to all provisions hereof. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it. In the event of the passage, after the date of this instrument of any law or ordinance of the United States, the State or any political subdivision thereof, wherein the Premises are situated, or any decision by a court of competent jurisdiction, creating or providing for any tax, assessment or charge against the Premises, this instrument, of the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby, that is to paid by Grantor, the Secured Indebtedness shall, at the option of the Grantee, become immediately due and payable and, in the event payment thereof is not made forthwith, Grantee may take, or cause to be taken, such action or proceeding as may be taken hereunder in the case of any other default in the payment of the indebtedness.

       3.    (a)    Grantor shall keep the Premises insured for the benefit of Grantee against loss or damage by fire, lightening, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke and other such hazards as Grantee may from time to time require, all in amounts approved by Grantee not exceeding 100% of full insurable value: all insurance herein provided for shall be in form and companies approved by Grantee; and , regardless of the types or amounts of insurance required and approved by Grantee, Grantor shall assign and deliver to Grantee, as collateral and further security for the payment of the Secured Indebtedness, all policies of insurance which insure against any loss or damage to the Premises, with loss payable to Grantee, without contribution by Grantee, pursuant to the New York Standard or other mortgagee clause satisfactory to Grantee. If Grantee, by reason of such insurance, receives any money for loss or damage, such amount may; at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the repair or replacement of the Premises or any part thereof, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the proper application of any amount paid over to Grantor

           (b)    Not less than 10 days prior to the expiration date of each policy of insurance required of Grantor pursuant to this Article, and of each policy of insurance held as additional collateral to secure Secured Indebtedness, Grantor shall deliver to Grantee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Grantee

           (c)    In the event of a foreclose of this deed, the purchaser of the Premises shall succeed to all the rights of Grantor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Grantee, with respect to all property conveyed and to be conveyed by this deed, pursuant to the provisions of this Article.

       4.    Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all statues, ordinances and requirements or any governmental authority relating to the Premises or any part thereof. Grantor shall promptly repair, restore, replace or rebuilt any part of the Premises, now or hereafter encumbered by this deed, which may be affected by any proceeding of the character referred to in Article 7 herein. No part of the premises, including, but not limited to, any building, structure, parking lot, driveway, landscape scheme, timber or other ground improvement. Equipment or other property, now or hereafter conveyed as security by or pursuant to this Deed, shall be removed, demolished or materially altered without the prior written consent of Grantee. Grantor shall complete, within a reasonable time, and pay for the building, structure or other improvement at any time in the process of construction on the property herein conveyed. Grantor shall not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof. Grantee and any persons authorized by Grantee shall have the right to enter and inspect the Premises at all reasonable times and access thereto shall be permitted for that purpose.

       5    Grantor shall faithfully perform the covenants of Grantor as lessor under any present and future leases,

1

affecting all or any portion of the Premises, and neither do nor neglect to do, nor permit to be done, anything which may cause the termination of said leases, or any of them, or which may diminish or impair their value, or the rents provided for therein, or the interest of Grantor or Grantee therein or thereunder. Grantor, without first obtaining the written consent of Grantee thereto, shall not (a) assign the rents, or any part thereof, from the Premises, (b) consent to the cancellation or surrender of any lease of the Premises, or any part thereof, now existing or hereafter to be made, (c) modify any such lease as to shorten the unexpired term thereof, or so as to decrease the amount of rent payable thereunder, or (d) collect rents from the Premises for more than one month in advance. Grantor shall procure and deliver to Grantee at the time of executing this deed, or at any time within thirty (30) days after notice and demand, estoppel letters or certificates from each lessee, tenant or occupant in possession of the Premises, as required by, and in form and substance satisfactory to, Grantee and deliver to Grantee a recorded assignment of all of the lessor's interest in said leases, in form and substance satisfactory to Grantee (in addition to the conveyance hereunder), and proof of due service of copy of said assignment on each lessee, either personally or by prepaid registered mail, return receipt requested.

6.     Grantor shall execute and deliver (and pay the costs of preparation and recording thereof) to Grantee and to any subsequent holder from time to time, upon demand, any further instrument or instruments, including, but not limited to, security deeds, security agreements, financing statements, assignments and renewal and substitution notes, so as to reaffirm, to correct and to perfect the evidence of the obligation hereby secured and the legal security title of Grantee to all and any part of the Premises intended to be hereby conveyed, whether now conveyed, later substituted for, or acquired subsequent to the date of this deed and extensions or modifications thereof. Grantor, upon request, made either personally or by mail, shall certify by a writing, duly acknowledged, to Grantee or to any proposed assignee of this deed, the amount of principal and interest then owing on the Secured Indebtedness and whether or not any offsets or defenses exist against the Secured Indebtedness, within 6 days in case the request is made personally, or within 10 days after the mailing of such request in case the request is made by mail.

7.     Notwithstanding any taking of any property, herein conveyed and agreed to be conveyed, by eminent domain, alteration of the grade of any street or other injury to, or decrease in value of, the Premises by any public or quasi-public authority or corporation, Grantor shall continue to pay principal and interest on the Secured Indebtedness, and any reduction in the Secured Indebtedness resulting from the application by Grantee of any award or payment for such taking, alteration, injury to decrease in value of the Premises, as hereinafter set forth, shall be deemed to take effect only on the date of such receipt; and said award or payment may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the purpose of altering, restoring or rebuilding any part of the Premises which may have been altered, damaged or destroyed as a result of such taking, alteration of grade, or other injury to the Premises, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the application of any amount paid over to Grantor. If, prior to the receipt by Grantee of such award or payment, the Premises shall have been sold on foreclosure of this deed, Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this deed shall have been sought or recovered or denied, and of the reasonable counsel fees, costs and disbursements incurred by Grantee in connection with the collection of such award or payment.

8.     Grantor shall deliver to Grantee, at any time within 30 days notice and demand by Grantee but not more frequently than once in every 12 months period, (i) a statement in such reasonable detail as Grantee may request, certified by the Grantor or an executive officer of a corporate Grantor, of the leases relating to the Premises, and (ii) a statement in such reasonable detail as Grantee may request certified by a certified public accountant or, at the option of Grantee, by the Grantor or an executive officer or Treasurer of a corporate Grantor, of the income from and expenses of any one or more of the following: (a) the conduct of any business on the Premises, (b) the operation of the Premises, or (c) the leasing of the Premises or any part thereof, for the last 12 months calendar period prior to the giving of such notice, and, on demand, Grantor shall furnish to Grantee executed counterparts of any such leases and convenient facilities for the audit and verification of any such statement.

9.     Upon the occurrence of any one of the following events (herein called an "event of default"):

(i)     Should Grantor fail to pay the secured Indebtedness, or any part thereof, when and as the same shall become due and payable;

(ii)     Should any warranty of Grantor herein contained, or contained in any instrument, transfer, conveyance, assignment or loan agreement given with respect to the Secured Indebtedness, prove untrue or misleading in any

material aspect;

      (iii)      Should the Premises be subject to actual or threatened waste, or any part thereof be removed, demolished or materially altered so that the value of the Premises be diminished except as provided for in Article 7 herein;

      (iv)      Should any federal tax lien or claim of lien for labor or material be filed of record against Grantor or the Premises and not be removed by payment or bond within 30 days from date of recording;

      (v)      Should any claim of priority to this deed by title, lien or otherwise be asserted in any legal or equitable proceeding;

      (vi)      Should Grantor make any assignment for the benefit of creditors, or should a receiver, liquidator or trustee of Grantor or of any of Grantor's property be appointed, or should any petition for the bankruptcy, reorganization or arrangement of Grantor, pursuant to the Federal Bankruptcy Act or any similar statute, be filed, or should Grantor be adjudicated a bankrupt or insolvent, or should Grantor, if a corporation, be liquidated or dissolved or its charter expire or be revoked, or, if a partnership or business association, be dissolved or partitioned, or, if a trust, be terminated or expire;

      (vii)      Should Grantor fail to keep, observe, perform, carry out and execute in every particular the covenants, agreements, obligations and conditions set out in this deed, or in the Note, or in any of the following instruments given with respect to the Secured Indebtedness; loan commitment of Grantee, construction loan agreement between Grantor and Grantee, or assignment of leases of Grantor; or

      (viii)      Should any event occur under any instrument, deed or agreement, given or made by Grantor to or with any third party, which would authorize the acceleration of any debt to any such party; then and thereupon Grantee may do any one or more of the following:

      (i)      enter upon and take possession of the Premises without the appointment of a receiver, or an application therefor, employ a managing agent of the Premises and let the same, either in its own name, or in the name of Grantor, and receive the rents, incomes, issues and profits of the Premises and apply the same, after payment of all necessary charges and expenses, on account of the Secured Indebtedness, and Grantor will transfer and assign to Grantee, in form satisfactory to Grantee, Grantor's lessor interest in any lease now or hereafter affecting the whole or any part of the Premises;

      (ii)      pay any sums in any form or manner deemed expedient by Grantee to protect the security of this instrument or to cure any event of default other than payment of interest or principal on Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of Grantee shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the rate of _____ % per annum, shall be added to and become a part of the Secured Indebtedness and be immediately due and payable to Grantee; and Grantee shall be subrogated to any encumbrance, lien, claim or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Grantee under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this instrument;

      (iii)      declare the entire Second indebtedness immediately due, payable and collectible, without notice to Grantor, regardless of maturity, and in that event, the entire Secured Indebtedness shall become immediately due, payable and collectible; and thereupon, Grantee may sell and dispose of the Premises at public auction, at the usual place for conducting sales at the courthouse in the county where the Premises or any part thereof may be, to the highest bidder for cash, first advertising the time, terms and place of such sale by publishing an notice thereof once a week for four consecutive weeks in a newspaper in which sheriff's advertisements are published in said county, all other notice being hereby waived by Grantor; and Grantee may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Premises in fee simple, which conveyance may contain recitals as to the happening of the default upon which the execution of the power of sale, herein granted, depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Grantee, and its agents, representatives, successors or assigns, may bid and purchase at such sale; and Grantor hereby constitutes and appoints Grantee or its assigns agent and attorney in fact to make such recitals, sale and conveyance, and all the acts of such attorney in fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee, or its assigns, (and in the event of a deed in lieu of foreclosure, then as to such conveyance) shall be effectual to bar all right, title and interest, equity or redemption, including all statutory redemption, homestead, dower, curtesy and all other exemptions of Grantor, or its successors in interest,

\

in and to said Premises; and Grantee, or its assigns, shall collect the proceeds of such sale, reserving therefrom all unpaid Secured Indebtedness with interest then due thereon, and all amounts advanced by Grantee for taxes, assessments, fire insurance premiums and other charges, with interest at the rate of % per annum thereon from the date of payment, together with all costs and charges for advertising, and commissions for selling the Premises, and 15% of the aggregate amount due, as attorney's fees, and pay over any surplus to Grantor (in the event of deficiency Grantor shall immediately on demand from Grantee pay over to Grantee, or its nominee, such deficiency); and Grantor agrees that possession of the Premises during the existence of the Secured Indebtedness by Grantor, or any person claiming under Grantor, shall be that of Tenant under Grantee, or it's assigns, and, in case of a sale, as herein provided, Grantor or any person in possession under Grantor shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over, the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition to any and all other remedies which Grantee may have at law or in equity.

Grantee, in any action to foreclose this deed, or upon any event of default, shall be at liberty to apply for the appointment of a receiver of the rents and profits or of the Premises or both without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Premises as security for the amounts due the Grantee, or the solvency of any person or corporation liable for the payment of such amounts.

In case of any sale under this deed by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceedings or otherwise, the Premises or any part thereof my be sold in one parcel and as entirety, or in such parcels, manner or order as Grantee in its sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless the entire Premises are sold or the Secured Indebtedness paid in full.

10.    Grantor, for himself and family, hereby waives and renounces all homestead and exemption rights provided for by the Constitution and Laws of the United States or the State of Georgia, in and to the Premises as against the collection of the Secured Indebtedness, or any part thereof; and Grantor agrees that where, by the terms of the conveyance or the Note secured hereby, a day is named or a time fixed for the payment of any sum of money or the performance of any agreement, the time states enters into the consideration and is of the essence of the whole contract.

11.    Grantee shall have the right from time to time to sue for any sums, whether interest, principal or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this deed, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Grantee thereafter to enforce any appropriate remedy against the Grantor, including an action of foreclosure, or any other action, for a default or defaults by Grantor existing at the time such earlier action was commenced.

12.    The rights of Grantee, granted and arising under the clauses and covenants contained in this deed and the Note, shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which Grantee may have in law or equity, and none of them shall be in exclusion of the others, and all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under security deeds, and preservation of security as provided at law. No act of Grantee shall be construed as an election to proceed under any one provision herein or under the Note to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity anything herein or otherwise to the contrary notwithstanding.

13.    Every provision for notice and demand for request shall be deemed fulfilled by written notice and demand or request personally served on one or more of the persons who shall at the time hold the record title to the Premises, or on their heirs or successors, or mailed by depositing it in any post office station or letter box, enclosed in a postpaid envelope (a) addressed to such person or persons, or their heirs or successors, at his, their or its address last known to Grantee or (b) addressed to the street address of the Premises hereby conveyed.

14.    Any indulgence or departure at any time by the Grantee from any of the provisions hereof, or of any obligation hereby secured, shall not modify the same or relate to the future or waive future compliance therewith by the Grantor.

15.    The words "Grantor" and "Grantee" whenever used herein shall include all individuals, corporations (and if a corporation, its officers, employees, agents or attorneys) and any and all other persons or entities, and the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and all those holding under either of them, and the pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the word "Note" shall also include one or more notes and the grammatical construction of sentences shall conform thereto. If more than one party shall execute this deed, the term "Grantor" shall mean all parties signing, and each of them, and each agreement, obligation and Secured Indebtedness of the Grantor shall be and mean the several as well as joint undertaking of each of them.

IN WITNESS WHEREOF, this deed has been duly executed and sealed by Grantor the day and year first above written.

Signed, sealed, and delivered in
the presence of:

_Elizabeth Anderson_
Witness

_Richard Webster_
Notary Public

(SEAL)

**EXPIRES JUNE 19, 2008**
**COBB COUNTY, GA**

Signed, sealed, and delivered in
the presence of:

_Elizabeth Anderson_
Witness

_Richard Webster_
Notary Public

(SEAL)

**EXPIRES JUNE 19, 2008**
**COBB COUNTY, GA**

HIGHWAY 279 DEVELOPMENT, LLC, a
Georgia limited liability company

By:    Grace Development Corp., a Georgia
        corporation, its Manager

        By: _____(SEAL)
            J. H. Rowland, III, President

            [CORPORATE SEAL]

CONRAD MORTGAGE CORPORATION, a
Georgia corporation

By: _____(SEAL)
    J. H. Rowland, III, President

    [CORPORATE SEAL]

Exhibit A

STATE OF GEORGIA
COUNTY OF FORSYTH

## HYPOTHECATION AGREEMENT

TO:        **REGIONS BANK**

FROM:   **CONRAD MORTGAGE CORPORATION, a Georgia corporation**

DATE:   **AUGUST 19, 2004**

In consideration of your making, renewing, or extending a loan, or loans, to **HIGHWAY 279 DEVELOPMENT, LLC, a Georgia limited liability company** (hereinafter referred to as "Borrower"), for which the following-described property belonging to **CONRAD MORTGAGE CORPORATION, a Georgia corporation** (hereinafter "Conrad") has been tendered to **REGIONS BANK** ("Lender") as collateral security:

All that tract or parcel of land lying and being in Land Lots 1023, 1024, 1065, and 1066 of the 3rd District, 1st Section of Forsyth County, Georgia, and being Lots 7, 12, 13, 33, and 34 of Sawnee View Farms Subdivision, as per plat of said subdivision recorded at Plat Book 41, pages 276-278, Forsyth County Records, which plat and record thereof are incorporated herein by reference fore a more complete description of the Property;

and for the purpose of enabling said Borrower to obtain credit therefore, Conrad hereby certifies that the said Property has been duly assigned, released, transferred, and delivered by me to said Lender by Deed to Secure Debt to which this Hypothecation Agreement is attached, and by these presents Conrad does hereby assign, release, and transfer unto said Borrower, all of Conrad's right, title, and interest in and to said Property, and hereby expressly authorizes said Borrower to pledge or hypothecate all or any part of said Property for the indebtedness aforesaid, and all renewals and extensions thereof, and also for any and all other indebtedness of the same Borrower to Lender, created at any time before this authorization shall have been revoked in writing and all renewals and extensions thereof, and Conrad waives notice of all or any such indebtedness or extension or renewal thereof.

Furthermore, Conrad requests that Lender give, or continue to give, said Borrower credit in the form of loans or renewals or extensions, as aforesaid, and in consideration of all or any such credit so granted by Lender, Conrad agrees that all or any property pledged or hypothecated, as aforesaid, shall be subject, in Lender's hands or those of Lender's assignees or pledgees, to all powers which would apply thereto by contract or otherwise if said Property in fact so pledged or hypothecated stood in the name of said Borrower itself and not in Conrad's name. The proceeds of all loans shall be accounted for and paid over the Borrower aforesaid, and said collateral securities may be disposed of and/or paid over to or upon the direction of said Borrower.

1

This agreement shall be binding on Conrad's heirs, executors, administrators, and assigns and inure to the benefit of Lender's successors and/or assigns.

Executed and delivered by Conrad under hand and seal this the 19th day of August, 2004.

Signed, sealed, and delivered in
the presence of:

*Elizabeth Anderson*
Witness

*(signature)*
Notary Public

_____ (SEAL)

**EXPIRES JUNE 19, 2008
COBB COUNTY, GA**

**CONRAD MORTGAGE CORPORATION, a
Georgia corporation**

By _____ (SEAL)
J. H. Rowland, III, President

[CORPORATE SEAL]

(Page 1 of 2)
8699



Clerk, please cross-reference to Declaration
recorded at Book 816, Page 77-103

### AMENDMENT TO DECLARATION OF PROTECTIVE COVENANTS
### OF SAWNEE VIEW FARMS

COMES NOW Conrad Mortgage Corporation, a declarant under that certain Declaration of Protective Covenants of Sawnee View Farms Subdivision recorded at Book 816, Page 77-103, Georgia Records, and pursuant to a special meeting of the Sawnee View Farms Homeowners Association conducted on the 17th day of July, 1997 hereby amends the Declaration as follows:

Article 7.16 is hereby deleted in its entirety and is hereby restated as follows:

7.16    "Fences. No fence or fending type barrier of any kind shall be placed, erected, allowed or maintained upon any Lot without the prior written consent of the ARC. Under no circumstances shall any fence be placed, erected, allowed or maintained upon any Lot closer to the street than the rear one-third of the residence located on the lot. Subject to approval in quality construction and materials by the ARC in the ARC's sole reasonable discretion, shadowbox style privacy fencing constructed of six foot maximum height, dog-eared, unpainted, cedar and the other styles described in "Schedule A - Fence Styles" attached hereto shall be approved by the ARC, provided, however, that the ARC shall have the discretion to approve other fence styles so long as the same meet the above-described criteria for quality in construction, materials and design and are in sympathy with the overall designs utilized in Sawnee View Farms. Notwithstanding the foregoing, the Declarant shall have the right to erect fencing of any type, at any location, on any Lot during the period that such Lot is being used by Declarant as a model home. The Board shall have the right to erect fencing of any type considered appropriate or desirable by the Board at any location on the Common Property."

WITNESS the hand and seal of the undersigned this _6th_ day of _October_, 1997.

Forsyth County Georgia
Clerks Office Superior Court
Filed for record on the ____
day of ____ 19_97_
at _12:15_ o'clock _P_.M. Recorded in
Book _1184_ Page _699 - 700_
day of ____ 10 - 28_, 19_97_
_Bonnie Janelle_ Clerk, By _ft_
_pd + ct Carl A Crowley_

DECLARANT
Conrad Mortgage Corporation

By: _____
Y.H. Rowland, III, Its President
[Corporate Seal]

ATTEST:
Signed, sealed and delivered this _6th_ day
of _October_, 1997, in the presence of:

_W. O. ____
Witness

_____
NOTARY PUBLIC          Notary Public DeKalb County, Georgia
My commission expires: My Commission Expires December 18, 1998

184
99

## Schedule "A"

1.  Wrought Iron

2.  Cedar with 1 inch spacing

3.  Solid cedar dog ear

4.  Solid cedar - scalloped (inverted)

5.  Solid cedar - scalloped

6.  Spaced French Gothic

Doc ID: 011106290003 Type: QLR
Filed: 04/29/2009 at 01:41:10 PM
Fee Amt: $18.00 Page 1 of 3
Transfer Tax: $0.00
Forsyth County, GA
Greg G. Allen Clerk Superior Ct
BK**5397** PG**423-425**

AFTER RECORDING RETURN TO:
Seacrest, Karesh, &Tate & Bicknese, LLP
Edwin A. Tate, Esq.
36 Perimeter Center East, Suite 450
Atlanta, Georgia 30346

R.t.

## QUITCLAIM DEED OF RELEASE

STATE OF GEORGIA

COUNTY OF FORSYTH

THIS INDENTURE, made the ⟨7ᵗʰ day of April, in the year Two Thousand Nine, between REGIONS BANK hereinafter called "Grantor", and HIGHWAY 279 DEVELOPMENT, LLC, a Georgia limited liability company and CONRAD MORTGAGE CORPORATION, a Georgia corporation, hereinafter called "Grantee" (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

WITNESSETH: That Grantor for and in consideration of the sum of One and No/100 ($1.00) Dollar and other good and valuable consideration, cash in hand paid, the receipt of which is hereby acknowledged, has bargained, sold, and does by these presents bargain, sell, remise, release, and forever quit-claim to Grantee all the right, title, interest, claim or demand which the Grantor has or may have had in and to the following, to wit:

All that tract or parcel of land lying and being in Land Lot 1023, 1024, 1065 and 1066 of the 3ʳᵈ District, 1ˢᵗ Section, Forsyth County, Georgia, being more particularly described on Exhibit "A", attached hereto and made a part hereof (the "Property")

with all the rights, members and appurtenances to the said described premises in anywise appertaining or belonging.

TO HAVE AND TO HOLD the said described premises unto the Grantee, so that neither the said Grantor, nor any other person or persons claiming under Grantor shall at any time claim or demand any right, title or interest to the aforesaid described premises or its appurtenances.

THE PURPOSE OF THIS CONVEYANCE is to fully and completely release and forever to discharge the Property from the lien, security interest and security of title of the following instruments:

1. Deed to Secure Debt from Highway 279 Development, LLC, a Georgia limited liability company and Conrad Mortgage Corporation, a Georgia corporation to Regions Bank, dated August 19, 2004, recorded August 26, 2004 at Deed Book 3473, Page 662, Forsyth County, Georgia records.

IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year above written.

WITNESS:

_____
(Unofficial witness)

_____
Notary Public
Commission expires:

REGIONS BANK

By: _____

Name: _____

Title: _____

[BANK SEAL]

F:\DATA\D315\Quitclaim Deed of Release - FORSYTH.doc

EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lots 1023, 1024, 1065, and 1066 of the 3rd District, 1st Section of Forsyth County, Georgia, and being Lots 7, 12, 13, 33, and 34 of Sawnee View Farms Subdivision, as per plat of said subdivision recorded at Plat Book 41, pages 276-278, Forsyth County Records, which plat and record thereof are incorporated herein by reference fora a more complete description of the Property.

When Recorded please return to:
Sawnee View Farms HOA
PO Box 1202
Cumming. GA 30028



Doc ID: 011409030001 Type: LIEN
Filed: 10/14/2009 at 11:06:29 AM
Fee Amt: $7.00 Page 1 of 1
Forsyth County, GA
Greg G. Allen Clerk Superior Ct
BK223 PG689

## HOMEOWNERS ASSOCIATION LIEN
## FORSYTH COUNTY, GEORGIA

SAWNEE VIEW FARMS HOMEOWNERS ASSOC
(LIEN HOLDER)

P O BOX 1202   CUMMING, GA 30028
(ADDRESS)

HEREBY CLAIMS A LIEN IN THE AMOUNT OF $ 669.40 ON THE BELOW DESCRIBED
REAL ESTATE PROPERTY OWNED BY

CONRAD MORTGAGE, ~~LTD~~ CORP
(PROPERTY OWNER(S))

FOR HOMEOWNERS ASSOCIATION FEES WHICH BECAME DUE 07-31-09 ON
THE FOLLOWING PROPERTY                                    (DATE)

DISTRICT  03  SECTION  1  LAND LOT(S)  1024

LOT(S)  7  SUBDIVISION NAME SAWNEE VIEW FARMS

BEING MORE FULLY DESCRIBED IN DEED BOOK ~~543~~ PAGE ~~616~~ OF
THE FORSYTH COUNTY RECORDS.                    767          516 (E3)

THIS NOTICE AND CLAIM OF LIEN IS FILED IN THE OFFICE
OF THE CLERK OF SUPERIOR COURT OF FORSYTH COUNTY WHERE THE PROPERTY
IS LOCATED.

I HAVE THIS DATE MAILED A COPY OF THE CLAIM OF LIEN BY REGISTERED OR
CERTIFIED MAIL TO THE OWNER OF THE PROPERTY.

THIS  14  DAY OF OcToBER  2009.

                              SAWNEE VIEW FARMS HOA
                                          (LIEN HOLDER)

Geary E Beaulieu   GEARY BEAULIEU - TREASURER
                                          (TITLE)

MORGAN ESTES
NOTARY
EXPIRES
GEORGIA
AUG. 28. 2012
PUBLIC
FORSYTH COUNTY

(NOTARY PUBLIC)

------------------TO RELEASE CLAIM OF LIEN------------------

MAIL TO: FORSYTH COUNTY CLERK OF SUPERIOR COURT
         ATTN: REAL ESTATE FILINGS
         100 COURTHOUSE SQUARE STE 010
         CUMMING, GA 30040

THIS INSTRUMENT IS HEREBY CANCELLED AND THE CLERK OF SUPERIOR COURT OF
FORSYTH COUNTY, GEORGIA IS HEREBY AUTHORIZED AND DIRECTED TO SATISFY IT
OF RECORD.

THIS _____ DAY OF _____ , 200__.

                              _____
                                          (LIEN HOLDER)

                              BY)              (TITLE)

When Recorded please return to:
Sawnee View Farms HOA
PO Box 1202
Cumming. GA 30028

Doc ID:   011409640001 Type: LEN
Filed: 10/14/2009 at 11:07:59 AM
Fee Amt: $7.00 Page 1 of 1
Forsyth County, GA
Greg G. Allen Clerk Superior Ct
BK 223  PG 690

## HOMEOWNERS ASSOCIATION LIEN
## FORSYTH COUNTY, GEORGIA

SAWNEE VIEW FARMS HOMEOWNERS ASSOC
(LIEN HOLDER)

PO BOX 1202    CUMMING, GA 30028
(ADDRESS)

HEREBY CLAIMS A LIEN IN THE AMOUNT OF $ 669.40 ON THE BELOW DESCRIBED
REAL ESTATE PROPERTY OWNED BY

CONRAD MORTGAGE, INC CORP
(PROPERTY OWNER(S))

FOR HOMEOWNERS ASSOCIATION FEES WHICH BECAME DUE 07-31-09   ON
THE FOLLOWING PROPERTY                                    (DATE)

DISTRICT   03   SECTION   1   LAND LOT(S)   1024

LOT(S)   12   SUBDIVISION NAME SAWNEE VIEW FARMS

BEING MORE FULLY DESCRIBED IN DEED BOOK 5H3   PAGE 616   OF
THE FORSYTH COUNTY RECORDS.          767        516 (EB)

THIS NOTICE AND CLAIM OF LIEN IS FILED IN THE OFFICE
OF THE CLERK OF SUPERIOR COURT OF FORSYTH COUNTY WHERE THE PROPERTY
IS LOCATED.

I HAVE THIS DATE MAILED A COPY OF THE CLAIM OF LIEN BY REGISTERED OR
CERTIFIED MAIL TO THE OWNER OF THE PROPERTY.

THIS   14   DAY OF OCTOBER   2009.

SAWNEE VIEW FARMS HOA
(LIEN HOLDER)

GEARY BEAULIEU - TREASURER
(BY)                        (TITLE)

[Notary seal: GEARY E. BEAULIEU, NOTARY, EXPIRES GEORGIA AUG. 28, 2012, PUBLIC, FORSYTH COUNTY]

_____
(NOTARY PUBLIC)

----------------TO RELEASE CLAIM OF LIEN----------------

MAIL TO: FORSYTH COUNTY CLERK OF SUPERIOR COURT
         ATTN:  REAL ESTATE FILINGS
         100 COURTHOUSE SQUARE STE 010
         CUMMING, GA 30040

THIS INSTRUMENT IS HEREBY CANCELLED AND THE CLERK OF SUPERIOR COURT OF
FORSYTH COUNTY, GEORGIA IS HEREBY AUTHORIZED AND DIRECTED TO SATISFY IT
OF RECORD.

THIS _____ DAY OF _____, 200__.

_____
(LIEN HOLDER)

_____
BY)                        (TITLE)

When Recorded please return to:
Sawnee View Farms HOA
PO Box 1202
Cumming, GA 30028

```
Doc ID: 011408680001 Type: LIEN
Filed: 10/14/2009 at 11:08:22 AM
Fee Amt: $7.00 Page 1 of 1
Forsyth County, GA
Greg G. Allen Clerk Superior Ct
BK 223 PG 691
```

## HOMEOWNERS ASSOCIATION LIEN
### FORSYTH COUNTY, GEORGIA

SAWNEE VIEW FARMS HOMEOWNERS ASSOC
(LIEN HOLDER)

P O Box 1202    CUMMING, GA 30028
(ADDRESS)

HEREBY CLAIMS A LIEN IN THE AMOUNT OF $ 669.40 ON THE BELOW DESCRIBED REAL ESTATE PROPERTY OWNED BY

CONRAD MORTGAGE, INC CORP
(PROPERTY OWNER(S))

FOR HOMEOWNERS ASSOCIATION FEES WHICH BECAME DUE 07-31-09 ON THE FOLLOWING PROPERTY (DATE)

DISTRICT 03 SECTION 1 LAND LOT(S) 1024

LOT(S) 13 SUBDIVISION NAME SAWNEE VIEW FARMS

BEING MORE FULLY DESCRIBED IN DEED BOOK 5443 767 PAGE 616 516 OF THE FORSYTH COUNTY RECORDS.

THIS NOTICE AND CLAIM OF LIEN IS FILED IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF FORSYTH COUNTY WHERE THE PROPERTY IS LOCATED.

I HAVE THIS DATE MAILED A COPY OF THE CLAIM OF LIEN BY REGISTERED OR CERTIFIED MAIL TO THE OWNER OF THE PROPERTY.

THIS 14 DAY OF OcTobER 2009.

SAWNEE VIEW FARMS HOA
(LIEN HOLDER)

GERRY BEAULIEU - TREASURER
(TITLE)

E Beaulieu

Morn Estes
(NOTARY PUBLIC)

[Notary seal: MORGAN ESTES NOTARY PUBLIC EXPIRES GEORGIA AUG. 28, 2012 FORSYTH COUNTY]

----------------TO RELEASE CLAIM OF LIEN----------------

MAIL TO: FORSYTH COUNTY CLERK OF SUPERIOR COURT
ATTN: REAL ESTATE FILINGS
100 COURTHOUSE SQUARE STE 010
CUMMING, GA 30040

THIS INSTRUMENT IS HEREBY CANCELLED AND THE CLERK OF SUPERIOR COURT OF FORSYTH COUNTY, GEORGIA IS HEREBY AUTHORIZED AND DIRECTED TO SATISFY IT OF RECORD.

THIS _____ DAY OF _____, 200___.

_____
(LIEN HOLDER)

_____
BY)                          (TITLE)

When Recorded please return to:
Sawnee View Farms HOA
PO Box 1202
Cumming, GA 30028

```
Doc ID: 011409060001 Type: LIEN
Filed: 10/14/2009 at 11:58:40 AM
Fee Amt: $7.00 Page 1 of 1
Forsyth County, GA
Greg G. Allen Clerk Superior Ct
BK 223   PG 692
```

## HOMEOWNERS ASSOCIATION LIEN
### FORSYTH COUNTY, GEORGIA

SAWNEE  VIEW FARMS  HOMEOWNERS  ASSOC
**(LIEN HOLDER)**

P O BOX  1202   CUMMING, GA  30028
**(ADDRESS)**

HEREBY CLAIMS A LIEN IN THE AMOUNT OF $ 669.40 ON THE BELOW DESCRIBED REAL ESTATE PROPERTY OWNED BY

CONRAD MORTGAGE, ~~LLC~~ CORP
**(PROPERTY OWNER(S))**

FOR HOMEOWNERS ASSOCIATION FEES WHICH BECAME DUE 07-31-09 ON THE FOLLOWING PROPERTY **(DATE)**

DISTRICT 03   SECTION 1   LAND LOT(S) 1024

LOT(S) 33   SUBDIVISION NAME SAWNEE VIEW FARMS

BEING MORE FULLY DESCRIBED IN DEED BOOK ~~5115~~ PAGE ~~616~~ OF THE FORSYTH COUNTY RECORDS.   767   516 (HEB)

THIS NOTICE AND CLAIM OF LIEN IS FILED IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF FORSYTH COUNTY WHERE THE PROPERTY IS LOCATED.

I HAVE THIS DATE MAILED A COPY OF THE CLAIM OF LIEN BY REGISTERED OR CERTIFIED MAIL TO THE OWNER OF THE PROPERTY.

THIS 14 DAY OF OCTOBER 2009.

SAWNEE VIEW FARMS  HOA
**(LIEN HOLDER)**

GERRY BEAULIEU - TREASURER
**(TITLE)**

E Beaulieu

MORGAN ESTES
NOTARY
EXPIRES
GEORGIA
AUG. 28, 2012
PUBLIC
FORSYTH COUNTY

Mani Estes
**(NOTARY PUBLIC)**

----------TO RELEASE CLAIM OF LIEN----------

MAIL TO: FORSYTH COUNTY CLERK OF SUPERIOR COURT
ATTN: REAL ESTATE FILINGS
100 COURTHOUSE SQUARE STE 010
CUMMING, GA 30040

THIS INSTRUMENT IS HEREBY CANCELLED AND THE CLERK OF SUPERIOR COURT OF FORSYTH COUNTY, GEORGIA IS HEREBY AUTHORIZED AND DIRECTED TO SATISFY IT OF RECORD.

THIS _____ DAY OF _____, 200__.

_____
**(LIEN HOLDER)**

_____
**BY)**                    **(TITLE)**

When Recorded please return to:
Sawnee View Farms HOA
PO Box 1202
Cumming, GA 30028

Doc ID: 011400870001 Type: LEN
Filed: 10/14/2009 at 11:58:59 AM
Fee Amt: $7.00 Page 1 of 1
Forsyth County, GA
Greg G. Allen Clerk Superior Ct
BK 223 PG 693

## HOMEOWNERS ASSOCIATION LIEN
## FORSYTH COUNTY, GEORGIA

SAWNEE VIEW FARMS HOMEOWNERS ASSOC
(LIEN HOLDER)

P O BOX 1202   CUMMING, GA 30028
(ADDRESS)

HEREBY CLAIMS A LIEN IN THE AMOUNT OF $ 669.40 ON THE BELOW DESCRIBED
REAL ESTATE PROPERTY OWNED BY

CONRAD MORTGAGE, ~~AND~~ CORP
(PROPERTY OWNER(S))

FOR HOMEOWNERS ASSOCIATION FEES WHICH BECAME DUE 07-31-09 ON
THE FOLLOWING PROPERTY                                    (DATE)

DISTRICT 03 SECTION 1 LAND LOT(S) 1024

LOT(S) 34 SUBDIVISION NAME SAWNEE VIEW FARMS

BEING MORE FULLY DESCRIBED IN DEED BOOK 543 PAGE 616 OF
THE FORSYTH COUNTY RECORDS.          767          516 (CB)

THIS NOTICE AND CLAIM OF LIEN IS FILED IN THE OFFICE
OF THE CLERK OF SUPERIOR COURT OF FORSYTH COUNTY WHERE THE PROPERTY
IS LOCATED.

I HAVE THIS DATE MAILED A COPY OF THE CLAIM OF LIEN BY REGISTERED OR
CERTIFIED MAIL TO THE OWNER OF THE PROPERTY.

THIS 14 DAY OF OCTOBER 2009.

SAWNEE VIEW FARMS HOA
(LIEN HOLDER)

GEARY BEAULIEU - TREASURER
(BY)                          (TITLE)
                    E Beaulieu

M___ Estes
(NOTARY PUBLIC)

MORGAN ESTES
NOTARY PUBLIC
EXPIRES
GEORGIA
AUG. 28, 2012
FORSYTH COUNTY

------------------TO RELEASE CLAIM OF LIEN------------------

MAIL TO: FORSYTH COUNTY CLERK OF SUPERIOR COURT
         ATTN: REAL ESTATE FILINGS
         100 COURTHOUSE SQUARE STE 010
         CUMMING, GA 30040

THIS INSTRUMENT IS HEREBY CANCELLED AND THE CLERK OF SUPERIOR COURT OF
FORSYTH COUNTY, GEORGIA IS HEREBY AUTHORIZED AND DIRECTED TO SATISFY IT
OF RECORD.

THIS _____ DAY OF _____, 200___.

_____
                    (LIEN HOLDER)

_____
BY)                    (TITLE)

**Secretary of State**
**Corporations Division**
**Suite 315, West Tower**
**2 Martin Luther King Jr. Dr.**
**Atlanta, Georgia  30334-1530**

CONTROL NUMBER:   9430186
EFFECTIVE DATE:   11/29/1994
COUNTY          :   FULTON
REFERENCE       :   0093
PRINT DATE      :   12/08/1994
FORM NUMBER     :   311

CARL A. CROWLEY, III ESQ.
945 EAST PACES FERRY ROAD, SUITE 1400
ATLANTA GA  30326

CERTIFICATE OF INCORPORATION

I, MAX CLELAND, Secretary of State and the Corporation Commissioner of the State
of Georgia, do hereby certify under the seal of my office that

SAWNEE VIEW FARMS HOMEOWNERS ASSOCIATION, INC.

has been duly incorporated under the laws of the State of Georgia on the effective
date stated above by the filing of articles of incorporation in the office of the
Secretary of State and by the paying of fees as provided by Title 14 of the
Official Code of Georgia Annotated.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia
on the date set forth above.

Max Cleland

MAX CLELAND
SECRETARY OF STATE



CORPORATIONS
656-2817

CORPORATIONS HOT LINE
404-656-2222
Outside Metro-Atlanta

### ARTICLES OF INCORPORATION
### OF
### SAWNEE VIEW FARMS HOMEONWERS ASSOCIATION, INC.

Article 1.    Name and Principal Place of Business.  The name of the Corporation is Sawnee View Farms Homeowners Association, Inc., having its principal place of business at 1400 Resurgens Plaza, 945 East Paces Ferry Road, Atlanta, Fulton County, Georgia  30326.

Article 2.    Duration.  The Corporation shall have perpetual duration.

Article 3.    Applicable Statute.  The Corporation is organized pursuant to the provisions of the Georgia Nonprofit Corporation Code.

Article 4.    Purposes and Powers.  The Corporation does not contemplate pecuniary gain or profit, direct or indirect, to its members.

(a)    In way of explanation but not of limitation, the purposes of which it is formed are:

   (i)    to be and constitute the Association to which reference is made in the Declaration of Protective Covenants for Sawnee View Farms (hereinafter the "Declaration"), establishing a plan of development recorded or to be recorded in the Office of the Clerk of the Superior Court of Forsyth County, Georgia, to perform all obligations and duties of the Association, and to exercise all rights and powers of the Association, as specified therein, in the Bylaws, and as provided by law; and

(b)    In furtherance of its purposes, the Corporation shall have the following powers, which, unless indicated otherwise by the Declaration or Bylaws, may be exercised by the Board of Directors:

   (i)    all of the powers conferred upon nonprofit corporations by common law and the statutes of the State of Georgia in effect from time to time;

(ii)   all of the powers necessary or desirable to perform the obligations and duties and to exercise the rights and powers set out in these Articles, the Bylaws, or the Declaration, including, without limitation, the following:

(1)   to fix and to collect assessments or other charges to be levied;

(2)   to manage, control, operate, maintain, repair, and improve property subjected to the Declaration or any other property for which the Corporation by rule, regulation, Declaration, or contract has a right or duty to provide such services;

(3)   to enforce covenants, conditions, or restrictions affecting any property to the extent the Association may be authorized to do so under any Declaration or Bylaws;

(4)   to engage in activities which will actively foster, promote and advance the common interests of all Owners;

(5)   to buy or otherwise acquire, sell, or otherwise dispose of, mortgage, or otherwise encumber, exchange, lease, hold, use, operate, and otherwise deal in and with real, personal, and mixed property of all kinds and any right or interest therein for any purpose of the Corporation;

(6)   to borrow money for any purpose as may be limited by the Bylaws;

(7)   to enter into, make, perform, or enforce contracts of every kind and description, and to do all other acts necessary, appropriate, or advisable in carrying out any purpose of the Association, with or in association with any other association, corporation, or other entity or agency, public or private;

(8)   to act as agent, trustee, or other representative of other corporations, firms, or individuals, and as such to advance the business or ownership interest in such corporations, firms, or individuals;

(9)   to provide any and all supplemental municipal services as may be necessary or proper.

the foregoing enumeration of powers shall not limit or restrict in any manner the exercise of other and further rights and powers which may now or hereafter be allowed or permitted by law; and the powers specified in each of the paragraphs of this Article 4 are independent powers, not to be restricted by reference to or inference from the terms of any other paragraph or provision of this Article 4.

Article 5.    Membership. The Corporation shall be a membership corporation without certificates or shares of stock. Each owner of a Lot in the Development is a member and shall be entitled to one (1) vote for each Lot owned.

Article 6.    Board of Directors. The business and affairs of the Corporation shall be conducted, managed, and controlled by a Board of Directors. The initial Board shall consist of one (1) member. The name and address of the initial Director is as follows:

J. H. Rowland, III
403 Bainbridge Road
Atlanta, Georgia  30327

The method of election, term of office, removal and filling of vacancies shall be as set forth in the Bylaws. The Board may delegate such operating authority to such companies, individuals, or committees as it, in its discretion, may determine.

Article 7.    Liability of Directors. Directors shall have no personal liability to the Corporation or its members for monetary damages for breach of the duty of care or other duty as a director except as otherwise provided under Section 14-3-831 of the Georgia Nonprofit Corporation Code.

Article 8.    Dissolution. The Corporation may be dissolved only as provided in the Declaration, Bylaws, and by the laws of the State of Georgia.

Article 9.    Amendments. These Articles may be amended as provided by the Georgia Nonprofit Corporation Code, provided that no amendment shall be in conflict with the Declaration, and provided further that no amendment shall be effective to impair or dilute any rights of members

that are governed by such Declaration.

Article 10.    Incorporator. The name and address of the incorporator is as follows:

> Carl A. Crowley III, Esq.
> STARKEY, LAND & CROWLEY
> 1400 Resurgens Plaza
> 945 East Paces Ferry Road
> Atlanta, Georgia 30326

Article 11.    Registered Agent and Office. The initial registered office of the Corporation is Starkey, Land & Crowley, 1400 Resurgens Plaza, 945 East Paces Ferry Road, Atlanta, Fulton County, Georgia  30326, and the initial registered agent at such address is Carl A. Crowley III.

IN WITNESS WHEREOF, the party hereto has affixed his hand and seal this _24_ day of _November_, 1994.

_____
Carl A. Crowley, III, INCORPORATOR

CONSENT TO APPOINTMENT

AS REGISTERED AGENT

FOR SAWNEE VIEW FARMS HOMEOWNERS ASSOCIATION, INC.

Carl A. Crowley, III, Attorney at Law, does hereby acknowledge that he has been appointed as Registered Agent for Sawnee View Farms Homeonwers Association, Inc. pursuant to the provision of the Georgia Business Corporation Code, and that said Carl A. Crowley, III, Attorney at Law, does hereby consent to such appointment.

This 2r day of November, 1994.

_____
Carl A. Crowley, III

STARKEY, LAND & CROWLEY
1400 Resurgens Plaza
945 East Paces Ferry Road
Atlanta, Georgia  30326
(404) 237-2500



**MAX CLELAND**
Secretary of State
State of Georgia

Business Services and Regulation
Suite 315, West Tower
2 Martin Luther King, Jr. Drive
Atlanta, Georgia 30334-1530
(404) 656-2817

**TRANSMITTAL INFORMATION FOR GEORGIA
PROFIT OR NONPROFIT CORPORATIONS**

DO NOT WRITE IN SHADED AREA - SOS USE ONLY

DOCKET # _____ PENDING CONTROL # _____ CONTROL # _____

Docket Code _____ Corporation Type _____

Date Filed _____ Amount Received $ _____ Check/Receipt # _____

Jurisdiction (County) Code _____

Examiner _____ Date Completed _____

**NOTICE TO APPLICANT: PRINT PLAINLY OR TYPE REMAINDER OF THIS FORM.
INSTRUCTIONS ARE ON THE BACK OF THIS FORM.**

1. _____943180618_____
   Corporate Name Reservation Number
   SAWNEE VIEW FARMS HOMEOWNERS ASSOCIATION, INC.
   Corporate Name (exactly as appears on name reservation)

2. CARL A. CROWLEY III, ESQ.                     237-2500
   Applicant/Attorney                                              Telephone Number
   945 EAST PACES FERRY ROAD, SUITE 1400
   Address
   ATLANTA                    GEORGIA                    30326
   City                        State                      Zip Code

3. NOTICE: THIS FORM DOES NOT REPLACE THE ARTICLES OF INCORPORATION. MAIL OR DELIVER
   DOCUMENTS AND THE SECRETARY OF STATE FILING FEE TO THE ABOVE ADDRESS. DOCUMENTS
   SHOULD BE SUBMITTED IN THE FOLLOWING ORDER. (A COVER LETTER IS NOT REQUIRED.)

   1. FORM 227 - TRANSMITTAL FORM (ATTACH SECRETARY OF STATE FILING FEE OF $60.00 TO TH'S FORM)

   2. ORIGINAL ARTICLES OF INCORPORATION

   3. ONE COPY OF ARTICLES OF INCORPORATION

   I understand that the information on this form will be entered in the Secretary of State business registration database.
   I certify that a Notice of Incorporation or a Notice of Intent to Incorporate with a publishing fee of $40.00 has been or
   will be mailed or delivered to the authorized newspaper as required by law.

Authorized Signature _____          Date  11/28/94

BSR Form 227 (12/93)